## BROWN VS. STATE.

The party against whom a witness is called has the right to have him put on his *voire dire* in order to show his incompetency.

But the correct practice is for the party to state the object and ground of the application, so that the court may determine as to the propriety of entering upon the investigation.

Where such grounds are not stated, the presumption in this court must be that the application was not warranted by law.

The fact that the witness is an accomplice of the defendant, does not affect his competency.

The credit of a witness may be impeached by proof that he has made statements out of court, on the same subject, contrary to what he swears on the trial, provided the alleged statements are material to the issue; and provided also that the witness has undergone a previous cross-examination as to such statements, in which, if the statements were verbal, his attention was not only called to the particulars of the conversation, but also to the time, place and person involved in the supposed contradiction.

But where the record fails to show what the statements were which are alleged to be contradictory, the presumption is that they were properly rejected.

One co-defendant in an indictment still pending against him, cannot be a witness for his co-defendant. (*Moss vs. State,* 17 *Ark.,* 327.)

In a prosecution for felony, the record must affirmatively show that the defendant was personally present at each and every time when any step is taken by the court in his cause.

*Appeal from Pulaski Circuit Court.*

Hon. LIBERTY BARTLETT, Circuit Judge.

WHYTOCK, for the appellant.

I. The record does not show that the prisoner was present in court, personally, at the time the writ of *venire facias* for the trial of this case was issued. *Dig. sec.* 166, *p.* 416; *Sweeden vs. The State,* 19 *Ark.,* 205; 4 *Bl. Com.,* 318; 1 *Ch. Cr. L.,* 337; *Warren vs. The State,* 19 *Ark.,* 214.

II. The court erred in refusing to permit Greer, the accomplice and co-defendant in the indictment, who was discharged therefrom by the entry of *nol. pros.*, to be sworn upon his *voir dire*. The right to swear a witness upon his *voir dire* clearly belongs to the party objecting to his testimony. *Foley vs. Mason*, 6 *Md.*, 37. That an accomplice may be competent as a witness, is not denied; but he should be properly apprised of the condition in which he stands; that the effect of a *nol. pros.* is not to discharge him from liability, but if he spoke fully and truly, to give him an equitable title to a pardon. 1 *Stark. Ev.*, 143; 2 *id.*, *Title, accomplice*; *Dabney's case*, 1 *Robinson*, 696; *People vs. Whipple*, 9 *Cowen*, 707. It is true, as an abstract proposition, that a promise of pardon will not render an accomplice incompetent. But we submit, a witness sought to be introduced by the prosecution to show the guilt of the defendant, by disclosing acts and circumstances and crimes which he avows himself to have committed in concert and connection with the defendant, may have been so worked upon, so influenced, so instructed as to elevate the test from credibility to competency. If he was induced to believe, and did believe that, by giving testimony against his co-defendants, by making or admitting himself to be, an accomplice in the commission of the crime charged, he would be relieved from any liability to answer; if he had been induced to testify upon the assurance of a discharge in case of the conviction of co-defendants. Then we think he was incompetent to testify until apprised of the consequences and condition in which he would be placed.

III. The court erred in refusing to permit the defendant to examine the state's witness, Greer, as to statements made by him voluntarily, after he was arrested, and to examine him as to the manner of his arrest, the manner of his treatment after arrest, and the inducements held out to him to testify, for the purpose of attacking his credibility, by laying a foundation for contradicting him, if he spoke falsely, by showing that he had made different statements as to the circumstances testified to. The

party against whom a witness is produced has a right to show every thing which may in the slightest degree affect his credit. *Cameron vs. Montgomery*, 13 *Serg. & R.*, 132; 1 *Stark. Ev.* 211; 2 *Greenl. Ev.*, sec. 449; *The Queen's case*, 2 *B. & B.*, 301. The defendant sought in this cross examination to lay the founda- tion for impeaching the witness which the law required. The abstract objection that the confessions were made while the prisoner was in jail, or otherwise confined in a legal way, though for the very crime confessed, has never been recognized as an objection, but expressly denied. *Rex vs. Darrington*, 2 *Car. & P.*, 418; 1 *Wheeler Cr. Cas.*, 392; 4 *Barr*, 264; 11 *Ga.*, 225. 22 *Maine*, 171; 20 *Ala.*, 15; 23 *ib.* 38; 1 *Stroth.* (*S. C.*) 378; 9 *Rich.* (*S. C.*) 428; 5 *Halst.*, 163, 184; 14 *Ark.*, 556; *A fortiori*, these statements might be given, where the witness was not on his trial, but was introduced to involve others in the crime.

IV. The court erred in refusing to permit the defendant to introduce Roland for the purpose of contradicting and attacking the credibility of the witness Greer, by showing that he had made different statements as to these transactions and that he was endeavoring to engage persons in a conspiracy to implicate others in the commission of the crime with which he was charged.

V. The court erred in refusing to permit the defendant to intro- duce the testimony of Adolph Flanagin, included in the indict- ment, to show that the defendant was not present and had no- thing to do with the murder charged. It is with some delicacy that this proposition is submitted to the court; because it involves the necessity of reviewing, to some extent, the decision of the court in *Moss vs. The State*, 17 *Ark.*, 327. But we think that when the trial of several defendants, jointly indicted, has been severed under the statute, (*Dig. Cr. Pro. sec.* 179,) one has no such inter- est in the result of the trial of the other as would disqualify him from being a witness—the acquittal or conviction of the one can- not affect the trial of the other, except perhaps consequentially. 2 *Hale-P. C.*, 280; 1 *Stark. Ev.* 13 *and n.*; *U. S. vs. Henry*, 4 *W. C. C. R.*, 228; *Maffit vs. The State*, 2 *Humph.*, 90; *Marshall*

*vs. The State,* 8 *Ind.,* 488; *Hunt vs. The State,* 10 *Ind.,* 69; *Garrett vs. The State,* 6 *Mo.,* 1. If a person is made incompetent as a witness for another by being jointly indicted with him, then may the latter, by design, be deprived of his most necessary and important witness.

Mr. Attorney General JORDAN, for the state.

The court below did not err in refusing to permit the defendant to cross-examine Greer, as to his voluntary statements, the manner of his arrest and the inducements held out to him to testify, that the defendant might by such examination attack the credibility of the witness. It was proper for the court to refuse to let the witness be questioned on cross-examination with regard to matters not referred to either in whole or in part in the direct examination. *Green'l. Ev., Vol.* 1, *sec.* 445; *Roscoe's Cr. Evidence,* 130, *note* 1; *United States Digest, vol.* 23, 602.

That the witness cannot be cross-examined as to any matter, which (if admitted) would be collateral and wholly irrelevant to the matters at issue tor the purpose of contradicting him, see *Greenl. Evidence, vol.* 1, *sec.* 449; *Chitty's Practice, vol.* 3, 900; *Archbold's Practice & Pleading, vol.* 1, 578.

Before witness Riland could be introduced to testify as to the statements of witness Greer, made off the stand, relative to his voluntary statements, manner of arrest, etc., the witness Greer must first have been examined as to such statements. *Wharton's A. Cr. Law, vol.,* 1, 819.

The declarations of a witness made on the stand are inadmissible to contradict him unless his attention has been first called to such declarations. See *United States Digest, vol.* 23, 603 *and cases there cited.*

That the court did not err in refusing to permit Adolph Flanagin, an accomplice and co-defendant to be introduced as a witness for defendant, see *Wharton's A. Cr. Law, vol.* 1, 790; *Green'ls Evidence, 1st vol.* 379; *Moss vs. The State,* 17 *Ark.,* 327.

Mr. Justice COMPTON delivered the opinion of the court.

Simpson Brown—a colored person—was convicted, in the Pulaski circuit court, of murder in the first degree, and sentenced to be hanged. He moved for a new trial, which was overruled, and the case now comes before the court for consideration.

It is insisted by the counsel for the accused, that the court below erred in refusing to permit the witness, Washington Greer, who was an accomplice, to be sworn upon his *voir dire*. That the party against whom a witness is called, is entitled to have him put on his *voir dire*, in order to show his incompetency, is not denied. The correct practice, however, is to state the object and ground of the application, so that the court may determine as to the propriety of entering upon the investigation. The bill of exceptions merely states that it was "asked that the witness be put on his *voir dire*," without showing for what purpose, or why it was proposed so to examine him; and upon this state of case, the presumption must be, that the application was not warranted by law, and that the ruling of the court was correct. The fact that the witness was an accomplice, did not affect his competency; and if, as intimated in the argument, this was one of the grounds upon which an examination on the *voir dire* was sought, it was not a good one, and but serves to illustrate the rule above indicated. It is admitted that if the object was, also, to show incompetency, arising from defects of understanding, or of religious principle, and the court, after having been asked to do so, upon that ground, had refused to examine the witness, in the mode prescribed by law, touching the matter affecting his competency, such ruling would have been erroneous. But the bill of exceptions presents no such case; on the contrary, it contains no facts upon which we can decide whether or not there was error.

The next point relied on relates to the admissibility of evidence offered by the accused. The bill of exceptions, after showing that the witness, Greer, was interrogated as to what he had said on different occasions in regard to matters connected with the offence charged in the indictment, states as follows: "Defendant

then asked witness, on his cross-examination, as to further state-
ments and admissions he had made after he was arrested, and to
whom he had made them for the purpose of laying a foundation
for contradicting him by other witnesses—which was objected to,
and the objection sustained by the court." It is, undoubtedly,
true that the credit of a witness may be impeached by proof that
he has made statements out of court on the same subject, contrary
to what he swears at the trial, provided the alleged statements are
material to the issue; and provided, also, that the witness has
undergone a previous cross-examition as to such statements, in
which, if the statements are verbal, his attention was not only
called to the particulars of the conversation, but, in which, he
was also asked as to the time, place and person involved in the
supposed contradiction. But whether, in the case before us, "the
statements and admissions" of the witness were admissible as lay-
ing a foundation to contradict him, or for any other purpose, we
have no means of ascertaining, since the bill of exceptions does
not show, as it should, what those "statements and admissions'
were; and the presumption, therefore, is, that they were properly
rejected. In *Whitesides vs. Twitty*, 8 *Ired.*, 431, where the bill
of exceptions stated that "the declarations" of a party were
offered in evidence, "to show the consideration" of a note, it
was held that no question was presented for the consideration of
the court, as it did not appear what the declarations of the party
were. RUFFIN, C. J., in delivering the opinion of the court, lays
down the law so clearly and concisely that we quote his remarks
as applicable to this case. He says: "From the nature of a bill
of exceptions, as has been frequently declared by this court, it is
incumbent on the party excepting, when the error alleged con-
sists in rejecting evidence, to show distinctly in it, what the evi-
dence was, in order that its relevancy may appear, and that it
may be seen, that a prejudice has arisen to him from the rejection.
In like manner, when the alleged error consists in admitting evi-
dence, the exception must set forth the evidence actually given,
as it is the only means whereby the court can ascertain whether

41

or not the admission did, or might have done, the party a harm.
For verdicts and judgments are presumed to be right, and accor-
ding to law and justice, until the contrary be shown; as the bill
of exceptions is required to state all the facts necessary to show
the error clearly, since the party excepting is presumed to state
the case as strongly against the other party and for himself, as he
can, consistently with the truth." In *Styles vs. Gray*, 10 *Texas*
503, the bill of exceptions showed " that the defendant offered
evidence to attack the correctness of the surveyor's record, and
to show fraud in the dates of the location and survey of Ann
Gray, which was ruled out by the court," and it was held that
the bill of exceptions was too vague and uncertain, as to the
character of the evidence by which the defendant sought to
establish the fraud, to enable the court to say whether or not
there was error in ruling it out.    To the same effect are the cases
of *Carnal vs. The People*, 1 *Parker's Crim. Rep.*, 272 ; *Fowler
vs. Lee*, 4 *Munf.*, 373 ; and *Gatewood vs. Burrus*, 3 *Call's Rep.*,
194.

The bill of exceptions also states that the counsel for the
accused offered to examine the same witness " as to the manner of
his arrest, and the places in which, and the persons by whom he
was held in custody after his arrest"—which the court refused to
permit.    What the facts connected with the arrest and imprison-
ment of the witness were, we are not informed ; and consequently,
the objections we have just discussed, applies to the bill of excep-
tions in this particular.

There was no error in excluding the testimony of the witness,
Ryland.    He was introduced to prove that the witness, Greer,
had made statements at the jail, contrary to what he had sworn
on the trial, without any foundation for the introduction of such
testimony having been first laid, by an appropriate cross-exami-
nation of the witness sought to be impeached.    Nor was there
error in refusing to permit Adolph Flanagin to testify in behalf
of the accused.    He was a co-defendant in the indictment which

was still pending against him, and for that reason was incompetent, according to the decision of this court in *Moss vs. The State*, 17 *Ark.*, 327.

Without entering into a critical discussion of the charge given the jury by the court below, it is sufficient to remark, that, in view of the evidence adduced at the trial, and especially when taken in connection with the instructions given at the instance of the accused, it had no tendency, we think, in misleading the jury.

The remaining ground relied on for a reversal, is well taken. Upon examination, we find that the record does not show that the accused was personally present in court, at the time the *venire facias* for the trial of this case was ordered; and it has been repeatedly decided by this court that, in prosecutions for felony, the defendant must be personally present at each and every time when any step is taken by the court in his cause, and that the record must affirmatively show the fact. (*Sweeden vs. The State*, 19 *Ark.*, 209; *Sneed vs. The State*, 5 *Ark.*, 431; *Cole vs. The State*, 5 *Eng.*, 518.) For this error the judgment must be reversed, and the cause remanded with instructions to the court below to grant the accused a new trial.