(No. 15026.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER BECK, Plaintiff in Error.

*Opinion filed December 19, 1922.*

1. CRIMINAL LAW—*when it is error to instruct the jury after its retirement—waiver.* It is error for which a judgment will be reversed for a trial judge to hold any communication with the jury after its retirement except in open court, and whether or not the record shows that the jurors returned into open court after they had retired to consider their verdict it is error to give them an instruction in the absence of the defendant or his counsel, unless, in the case of a misdemeanor, the defendant has° waived his right to be present.

2. SAME—*legislature may change rules of evidence—presumptions.* The legislature, within constitutional limitations, has complete control over the rules of evidence and may enact laws declaring that upon proof of one fact another fact may be inferred, thus creating a statutory presumption, as no one has a vested right in the rules of evidence and they may be changed at any time, provided no constitutional privilege of the accused is destroyed.

3. SAME—*accused is entitled to fair trial by jury upon all the evidence.* The accused cannot be deprived of a fair and impartial trial by a jury of his peers according to the law of the land, and he is entitled to a fair chance to make his defense and to submit his case upon all the evidence, which must establish his guilt beyond a reasonable doubt.

4. SAME—*general rule as to power of legislature to establish an evidentiary fact.* The legislature may provide that a designated fact or facts shall be *prima facie* evidence of a certain other fact, but the inference of the existence of the main fact from the fact proved must not be purely arbitrary, unreasonable, unnatural or extraordinary, and the evidentiary fact must have some fair relation to or natural connection with the fact to be proved and some tendency to prove it.

5. SAME—*section 40 of the Prohibition act, making possession of liquor prima facie evidence of unlawful use, is valid.* Section 40 of the Illinois Prohibition act, providing that the possession of liquor by any person not legally permitted to possess the same under the act shall be *prima facie* evidence that such liquor is kept for a use in violation of the provisions of the act, does not violate a defendant's constitutional right to a fair trial nor put upon him the burden of proving his innocence.

305—38

WRIT OF ERROR to the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding.

E. M. RUNYARD, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ASHBEL V. SMITH, State's Attorney, GEORGE C. DIXON, and SIDNEY H. BLOCK, (JAMES WILSON GULLETT, and ALBERT D. RODENBERG, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Peter Beck was convicted in the county court of Lake county on an information charging him with unlawfully possessing intoxicating liquor on July 4, 1921, was sentenced to pay a fine of $500, and prosecutes this writ of error to reverse the judgment, a constitutional question being involved.

Beck had a house on Grass lake, which he and his wife used as a summer home. This house was searched by officers on July 4, 1921, under authority of a warrant issued for that purpose. The evidence for the People consisted of the testimony of the officers, and of intoxicating liquor, containers and articles used in the manufacture of beer which was found in the house as a result of the search. There was a crock containing ten gallons of beer which the defendant had made in the latter part of June, and there was also beer in bottles. The evidence showed the beer to be intoxicating. Beck testified that for many years he had been accustomed to make ten gallons of beer a month for the use of himself and his wife. His first brew in the summer of 1921 was in April or May, and the brew that was in the crock when the search was made was the fourth. The process required about six days. Beer requires some age, and his first brew was early, because he wanted it to be ready when he began to make his garden.

The Search and Seizure act (Laws of 1919, p. 930,) has been in force since July 1, 1919, under section 3 of

which it is unlawful to manufacture intoxicating liquor, with certain exceptions which did not include Beck's act. Section 40 of the Illinois Prohibition act (Laws of 1921, p. 681,) is as follows: "After the going into effect of this act, the possession of liquors by any person not legally permitted under this act to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this act. It shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquors were lawfully acquired and are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his *bona fide* guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used." The plaintiff in error contends that this section is unconstitutional; that it puts upon the defendant the burden of proving his innocence, requires him to testify against himself, and thereby deprives him of his right to a trial conducted in accordance with due process of law.

After the jury had retired they sent a note by the bailiff to the judge asking whether it was unlawful to manufacture intoxicating liquor for one's own use before July 1, 1921. Thereupon the judge, in the absence of the defendant and his counsel, stated to the jury that he could not instruct them orally in response to the inquiry and read to them the following:

"The court instructs the jury that the county of Lake, State of Illinois, has been prohibition territory since the first day of July, 1919, and that it has been unlawful for any person in any way to manufacture any intoxicating liquor in any quantity whatsoever within prohibition territory since the first day of July, 1919."

This instruction did not state the law correctly, for intoxicating liquor might have been manufactured for medicinal, sacramental, chemical or manufacturing purposes under the restrictions of the act. These purposes, however, did not include the manufacture of intoxicating liquor for use as a beverage, and the error in the instruction was of no importance in this case, for the evidence showed that the beer was made only for use as a beverage.

It is insisted that the instruction was erroneous because the counts of the information charging unlawful manufacture had been *nollied* and the instruction was not applicable to the remaining counts, which were for the unlawful possession, unlawful barter, unlawful furnishing, etc. The question of unlawful manufacture was competent as to the unlawful possession of the manufactured article, but regardless of the question of the correctness of the instruction the action of the court was error for which the judgment must be reversed.

The defendant was entitled to a public trial by jury, in every part of which he had a right to participate, to be present at every stage of the proceedings, to know everything that was done, to make objections, and to take such action as he might think best for securing his rights and for his protection. The law is well settled in this State that it is error for which a judgment will be reversed for a trial judge to hold any communication with the jury after their retirement to deliberate upon their verdict, except in open court. In *Crabtree* v. *Hagenbaugh,* 23 Ill. 349, the jury after they had retired sent for the judge, who went to their room and communicated with them in regard to the instructions which had been given. This court said: "This was manifestly done with no improper motive on the part of the judge, and it may be that it had no influence with them in the formation of their verdict. Indeed, the most the judge did was to decline to explain the meaning of the written instructions which had been given to the jury. We

choose to assume that what was said and done by the judge while in the jury room did not influence the jury in their deliberations, for we think that, independent of its effect upon the jury, the judgment should be reversed for the simple reason that such an interview did take place. If in this case no harm was actually done and for that reason the verdict is allowed to stand, we open the door to the inquiry in all such cases as to whether the party has been injured by the interview. Such an inquiry should not be tolerated. The policy of the law requires that all the proceedings of the court should be open and notorious and in the presence of the party, so that if he is not satisfied with it he may take exceptions to it in the mode pointed out by the law, and not be put to extraneous proof to show that an error has been committed in a secret proceeding, and, in fact, out of court."

In *Chicago and Alton Railroad Co.* v. *Robbins,* 159 Ill. 598, the court, in response to a note from the foreman of the jury inquiring whether damages should be assessed to the commencement of the suit or up to the present time, wrote on the same note, "Up to the present time," and sent it back by the bailiff who had brought it to him. The court, while holding that the answer stated the law correctly, reversed the judgment for the giving of it, and in doing so quoted from the case of *Sargent* v. *Roberts,* 1 Pick. 337, where a similar case arose, as follows: "As it is impossible, we think, to complain of the substance of the communication, the only question is whether any communication at all is proper, and if it was not, the party against whom the verdict was is entitled to a new trial. And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury after the cause has been committed to them by the charge of the judge unless in open court, and, where practicable, in the presence of the counsel in the cause." The court in the *Robbins case* quoted also the fol-

lowing from *O'Connor* v. *Guthrie & Jordan,* 11 Iowa, 80:
"If further instructions are to be given to the jury, though
the same, in principle, as those already given, the parties
have a right to require that they shall be given in open
court, that an opportunity may be afforded to know what
they are, except to them if desired, and ask others explana-
tory, if deemed necessary. Indeed, the necessity for adher-
ing to this practice with strictness is so manifest that argu-
ment in support of it is quite unnecessary. It may, at times,
it is true, be attended with inconvenience; but better so
than permit a practice so liable to abuse and so much in
conflict with the rights of parties litigant."

In *City of Mound City* v. *Mason,* 262 Ill. 392, it was
held to be error for a trial judge to hold any communica-
tion with the jury in regard to the instructions in the case
except in open court, and that it was immaterial whether the
instructions given were right or wrong. There are many
cases in other States to the same effect. In the cases which
have been referred to, the instructions were given to the
jury in the jury room, or they were sent to the jury by a
bailiff, or came to their knowledge in some other irregular
manner. In the present case the bill of exceptions shows
that while the jury were deliberating the bailiff presented to
the judge the note from the foreman, and the judge there-
upon stated to the jury that he could not instruct them
orally in response to their inquiry, and then read them the
instruction, which was handed to the sheriff and given to
the jury to consider with other instructions given in the
case. All this the bill states occurred after the jury had re-
tired and in the absence of the defendant and his counsel.
It is not stated that the jury were brought into open court,
but even if they were, the occurrence is not relieved of its
objectionable features. Neither the defendant nor his coun-
sel was present. No opportunity was given to object to the
rulings of the court or to present instructions in behalf of
the defendant or to ask for a modification of those given

by the judge. The defendant and his counsel were excluded from participation in this part of the trial. So far as they were concerned the proceedings were secret and *ex parte*, and their only information in regard to them was derived from hearsay after the event. In *Fisher* v. *People*, 23 Ill. 283, it is said that "when a jury comes into court asking instructions and are placed in a situation to be influenced by the court, the prisoner had an unquestionable right to present such views, in the shape of instructions to the jury, as the circumstances might require in his own behalf, and the court should have allowed it." In *Crabtree* v. *Hagenbaugh, supra,* it is said, as has been already quoted, "that all the proceedings of the court should be open and notorious and in the presence of the party, so that if he is not satisfied with it he may take exceptions to it in the mode pointed out by the law, and not be put to extraneous proof to show that an error has been committed in a secret proceeding." This was a criminal case, in which the presence of the defendant at the trial was essential unless waived. It is true the case was a misdemeanor and the defendant could waive his right to be present, but there is nothing in the record to show that he did waive his right, and without such waiver the court should not have proceeded in his absence.

The ninth instruction given at the request of the People was as follows:

"The possession of intoxicating liquor by any person not legally permitted to possess intoxicating liquor, shall be *prima facie* evidence that such liquor is kept for the purpose of being bartered, furnished or otherwise disposed of in violation of law; it shall not be unlawful to possess intoxicating liquor in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such intoxicating liquor was lawfully acquired and is for the use only of the personal consumption of the owner thereof and his family residing in such dwelling and of his *bona fide* guests when entertained by him therein, but the

burden of proof shall be upon the possessor of any intoxicating liquor, in any action concerning the same, to prove that such liquor was lawfully acquired, possessed and used."

This instruction was based upon section 40 of the Prohibition act and raises the question of the constitutionality of that section. The plaintiff in error does not argue or claim that the Illinois Prohibition act as a whole is invalid or that its prohibition of the manufacture, sale, possession, etc., of intoxicating liquor is unconstitutional, but only that section 40, by reason of the presumption which it creates from the possession of intoxicating liquor that such liquor is kept for the purpose of being sold or otherwise disposed of in violation of the provisions of the act, and by reason of its imposing upon the possessor of liquor in his dwelling house the burden of proving that such liquor was lawfully acquired, possessed and used, deprives the possessor of his liberty and property without due process of law and compels him to testify against himself. His counsel says that the People upon this trial simply proved the result of the search of the defendant's house under the warrant, and the defendant thereupon took the witness stand and explained in a very comprehensive manner his possession and use of the liquor found, and it is contended that the course pursued on the trial amounted to calling upon the defendant to testify against himself and to prove his own innocence.

The legislature has complete control over the rules of evidence and may enact laws declaring that upon proof of one fact another fact may be inferred, thus creating a statutory presumption. No one has a vested right in the rules of evidence and existing rules may be changed at any time, but the legislative power must be exercised within constitutional limitations, so that no constitutional right or privilege of the accused is destroyed. He cannot be deprived of a fair and impartial trial by a jury of his peers according to the law of the land. The accused must have a fair chance to make his defense and to submit the case to a jury upon

all the evidence, which must establish his guilt beyond a reasonable doubt. (*People* v. *McBride*, 234 Ill. 146; *Meadowcroft* v. *People*, 163 id. 56.) Subject to these limitations the general power of the legislature to prescribe rules of evidence and methods of proof is undoubted. "So long as the legislature, in prescribing rules of evidence in either civil or criminal cases, leaves a party a fair opportunity to make his defense and to submit all the facts to the jury, to be weighed by them upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds." (*Board of Excise* v. *Merchant*, 103 N. Y. 143.) In *State* v. *Buck*, 120 Mo. 479, statutes declaring that the failure of a bank should be *prima facie* evidence of knowledge of its insolvency by an officer of the bank prosecuted for receiving a deposit knowing the bank to be insolvent, did not violate a constitutional provision that "the right of trial by jury as heretofore enjoyed shall remain inviolate." In *Meadowcroft* v. *People, supra,* which was also a prosecution of a bank officer for receiving a deposit knowing the bank to be insolvent, it was said that this court is committed to the doctrine, as held in New York, Missouri and other States, that the legislature may provide that a designated fact or facts shall be *prima facie* evidence of a certain other fact but subject to the restrictions stated in the authorities cited. Those restrictions require that the inference of the existence of the main fact from the fact proved must not be purely arbitrary, unreasonable, unnatural or extraordinary; that the evidentiary fact must have some fair relation to or natural connection with the fact to be proved and some tendency to prove it.

The plaintiff in error argues that even though the provision that possession shall be *prima facie* evidence of a violation of the act be regarded as not violative of the constitution, the section goes further and imposes upon the defendant the burden of proof, thus requiring him to prove

his innocence instead of requiring the prosecution to establish his guilt beyond a reasonable doubt. This provision, as was said of one of a similar character in the Local Option law of 1907, has no tendency to overturn the doctrine of reasonable doubt in criminal cases. "The term *'prima facie* evidence' implies evidence which may be rebutted and overcome, and the provision in question merely establishes a rule of evidence." (*People* v. *McBride, supra.*) "The statute only prescribes to a certain extent and under particular circumstances what legal effect shall be given to a particular species of evidence if it stands entirely alone and is left wholly unexplained. This neither conclusively determines the guilt or innocence of the party who is accused nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried. The burden of proof remains continually upon the government to establish the accusation which it makes. * * * The only purpose and effect of the statute objected to are to give a certain degree of artificial force to a designated fact until such explanations are afforded as to show that it is at least doubtful whether the supposed statutory effect ought to be attributed to it, but the fact itself is still to be shown and established by proof sufficient to satisfy and convince the minds of the jurors. * * * But if the government, in proving the delivery of any quantity of spirituous liquor, in support of a prosecution for an alleged violation of the law prove also, as it must almost necessarily do, as a part of the transaction, the circumstances attending it, then those circumstances immediately become evidence in the case, to be weighed and considered by the jury; and although the naked delivery would be *prima facie* evidence of the sale, and so, indirectly, of the guilt of the accused, yet the proof being accompanied by evidence of the manner in which the delivery occurred and of the surrounding circumstances, he is not to be convicted unless, upon just consideration of all the facts thus disclosed and placed before the jury, they are satisfied, be-

yond a reasonable doubt, of his guilt." (*Commonwealth v. Williams,* 6 Gray, 1.)   "With what intent a person keeps intoxicating liquors is always a question of fact for the jury, to be determined upon a view of all the evidence, and in disposing of that question they are required to consider the keeping of the articles in the manner specified, as presumptive evidence of an unlawful intent.   But that evidence may be rebutted and controlled by the circumstances * * * as well as by other evidence in the case, whether shown by the accused in his defense or by the State in connection with the evidence proving the possession.   With such evidence the jury may also take into consideration the presumption of the innocence of the accused." *State* v. *Cunningham,* 25 Conn. 195.

The burden of proof of the defense of an alibi in a criminal case is on the defendant, but this does not relieve the prosecution of the necessity of proving his guilt beyond a reasonable doubt.   The burden of proof does not require the defendant to prove his alibi beyond a reasonable doubt, but only to prove facts and circumstances which, when considered in connection with all the evidence relied upon to establish his guilt of the crime charged, is sufficient to create in the minds of the jury a reasonable doubt of the truth of the charge.   *Hauser* v. *People,* 210 Ill. 253; *Carlton* v. *People,* 150 id. 181; *Flanagan* v. *People,* 214 id. 170.

It was said that the possession of intoxicating liquor may be entirely lawful yet its mere possession is declared evidence of an unlawful intent; that the mere fact of possession has no relation to the crime or tendency to prove a criminal intent, and that the inference is purely arbitrary and unreasonable.   In answer to this argument it was said in *State* v. *Cunningham, supra:* "It has been said that the keeping of spirituous liquors is a lawful act, and, being such, the legislature has no constitutional power to make it evidence of an unlawful act.   Many acts at common law are lawful, and yet the performance of them is prohibited

by the legislature in the legitimate exercise of their sovereign power. Even the sale of such liquors is not by the common law unlawful,—it is only made so by statute; and if the legislature can constitutionally prohibit such sale, we see not why they may not properly prescribe what acts shall be considered as evidence of an intent to make the sale."

In *Magner* v. *People,* 97 Ill. 320, the Game law of 1879 was upheld, which prohibited the selling or exposing for sale or having in possession for the purpose of selling or exposing for sale any of the animals, wild fowls or birds mentioned in section 2 of the act, and it was said to be obvious that the prohibition of all possession and sales of wild fowls and birds, whether killed or taken in this State or elsewhere during the prohibited seasons, would tend to protect the wild fowl and birds in this State by excluding the opportunity for evasion of the law. It was further said: "It is quite true that the mere act of allowing a quail netted in Kansas to be sold here does not injure or in anywise affect the game here; but a law which renders all sales and all possession unlawful will more certainly prevent any possession or any sale of the game within the State than will a law allowing possession or sales here of the game taken in other States. This is but one among many instances to be found in the law where acts which in and of themselves alone are harmless enough are condemned because of the facility they otherwise offer for a cover or disguise for the doing of that which is harmful."

In *State* v. *Cunningham, supra,* the act provided that the finding of spirituous liquor in possession of any person, except in his dwelling house, should constitute *prima facie* evidence that it was kept for sale. In *Commonwealth* v. *Williams, supra,* the delivery of liquor in any other place than a dwelling house was declared *prima facie* evidence of guilt. In *Board of Excise* v. *Merchant, supra,* the act provided that where a person was seen to drink intoxicating liquor on the premises of one who had license to sell

liquor not to be drunk on the premises, it should constitute *prima facie* evidence of guilt. In *People* v. *Cannon*, 139 N. Y. 32, a statute made the possession of second-hand bottles and kegs by a junk dealer presumptive evidence of their unlawful use. In *Parsons* v. *State*, 61 Neb. 244, a statute was sustained making the possession of intoxicating liquor by one not authorized to sell it, presumptive evidence of violation of law unless satisfactorily explained by the possessor. In *State* v. *Hurley*, 54 Me. 562, an act was held valid which provided that when an illegal sale of intoxicating liquor is alleged and a delivery is shown, such delivery shall be presumptive evidence of the sale, and it shall not be necessary to prove a payment. In all these cases it was held that the statute could not be assailed on constitutional grounds; that the defendant was entitled to a fair opportunity to present his defense and submit all the facts to the jury, to be weighed by them; and that the burden remained upon the State to prove the defendant guilty upon the whole evidence, including the presumption of innocence, beyond a reasonable doubt. In many other cases the courts of other States have sustained statutes enacting in various forms that the possession of intoxicating liquors shall be presumptive evidence of a violation of law. *State* v. *Tincher*, 81 W. Va. 441; *State* v. *Barrett*, 138 N. C. 630; *Gillespie* v. *State*, 96 Miss. 856; *State* v. *Humphrey*, 42 S. Dak. 512.

Section 40 does not violate constitutional limitations, and the court did not err in giving the instruction.

For the error in giving the instruction after the jury had retired, in the absence of the defendant and his counsel, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*