(No. 32057.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DONALD U. TILLEY, Plaintiff in Error.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

474

Bristow and Maxwell, JJ., dissenting.

A. M. Fitzgerald, and J. H. Weiner, both of Springfield, (Walter T. Day, of counsel,) for plaintiff in error.

Ivan A. Elliott, Attorney General, and George P. Coutrakon, State's Attorney, both of Springfield, (Robert B. Oxtoby, of Springfield, and Harry L. Pate, of Tuscola, of counsel,) for the People.

Mr. Justice Crampton delivered the opinion of the court: :

Plaintiff in error, Ronald U. Tilley, hereinafter referred to as defendant, was found guilty of manslaughter, after a trial by jury in the circuit court of Sangamon County. He was sentenced to the penitentiary for a term of not less than four nor more than ten years. He brings the cause here for review, listing 38 assignments of error. The cause was before this court, on review of a previous trial, in *People* v. *Tilley,* 406 Ill. 398, and was remanded for a new trial because of certain errors not involving the weight of evidence.

The record discloses that on July 20, 1946, Renee Stanley, a woman nineteen years of age, died in a hospital as the result of peritonitis caused by an abortion. In an oral statement made on the evening before her death she

revealed to her physician and to Frank M. Pfeifer, an assistant State's Attorney, that she had been pregnant and on July 9 had gone to defendant's office for an abortion; that he used an instrument on her private parts, and after applying a packing of gauze and cotton told her to go home; that on a subsequent visit the procedure was repeated; and that on the following day she became violently ill. Her statement, as testified to by Pfeiffer and the physician, was admitted into evidence as a dying declaration. It was the only evidence tending to connect defendant with the death of the girl. Defendant did not testify. In the course of the trial, after the State's Attorney began to prove intent by evidence that similar crimes had been committed by defendant on previous occasions, the latter signed a waiver stating that if it were proved he performed the abortion then he agreed the abortion was not necessary to save the life of the girl and no proof of criminal intent should be necessary. The waiver was introduced into evidence.

The assignments of error as argued in the briefs fall into five groups which we shall consider accordingly. Defendant first contends the statement of the deceased was not properly admitted into evidence for the reason that she was extremely ill, under the influence of drugs and medicine, and was not in sufficient possession of her mental faculties to understand the transaction. This same contention was disposed of by our previous opinion in this case, on evidence substantially similar to that contained in the present record, and need not be discussed at length herein. The assistant State's Attorney who questioned her testified she talked coherently and intelligibly; the clergyman who administered the last rites of her church testified she was coherent and lucid; and her physician testified that in his opinion her mental condition was very clear at the time the statement was obtained, that she was conscious and aware of what was going on, that she was mentally alert and lucid, and that peritonitis victims are generally alert. Questions

concerning the credibility of the witnesses and the weight to be given their testimony are matters for the court on the preliminary examination, or for the jurors when the witnesses testify before them, and this court will not substitute its judgment on such matters for that of the trial court or the jury. *People* v. *Tilley,* 406 Ill. 398.

It is also contended the court erred in admitting into evidence the preserved female parts of the deceased and allowing them to be exhibited to the jury: that such evidence could serve no useful purpose except to arouse anger and prejudice. This contention must likewise be rejected. The court has a reasonable discretion in the admission or rejection of exhibits in evidence. Even though the jury may have a full description of the injury by the testimony of physicians, it is not an abuse of discretion to admit in evidence the uterus itself to aid the jury in understanding the nature and extent of the injury and in determining how the offense was committed. It at least tended to prove a circumstance to be considered by the jury along with all the other evidence. See *People* v. *Tilley,* 406 Ill. 398; *People* v. *Hobbs,* 297 Ill. 399.

Further assignments of error are predicated upon the trial court's refusal to give certain instructions tendered by defendant. Eight instructions are specified. They concern the weight to be given the dying declaration, and refer to particular circumstances and conditions under which the statement was given, such as the effect of the drugs, medicine and illness upon the recollection and memory of deceased and her ability to understand what was happening. We have considered them in order and find in each case that the instruction is either improper, unnecessary or repetitious. Other instructions given by the court at defendant's request informed the jury that a dying declaration is not the best evidence, and that the circumstances under which it is made, such as the physical and mental condition of the declarant, and the method and manner of

taking it, "may be taken into consideration in determining the credibility or weight to be given such declaration." The court gave seventeen instructions tendered by defendant and nine tendered by the People. We think the jury was sufficiently instructed as to all those parts of the refused instructions which were proper to be given. Defendant tendered 41 instructions, a number far in excess of that necessary for the points involved in the case, and he is not in a position to complain that the court, in the length of time it could devote to consideration of the instructions, refused to give some of those tendered. *People* v. *Schneider,* 370 Ill. 612.

Defendant next alleges as prejudicial error that the trial judge was guilty of improper conduct in communicating with the jurors after they had retired to deliberate upon their verdict. The trial was concluded on a Saturday, and after the jury had retired it deliberated all night without arriving at a verdict. The next morning about eight o'clock the judge went to the jury room in the company of a bailiff, and inquired whether there was any hope of arriving at a verdict. One of the jurors stated they wanted further information, whereupon the judge told them to read the instructions. He explained further that any new instructions would have to be given in the presence of the attorneys and the defendant. One of the jurors then asked the meaning of defendant's waiver hereinabove referred to, and inquired whether defendant in that statement admitted performing an abortion. The judge replied, "No, he specifically denies it." Not long thereafter the jury reported the verdict.

It is insisted that any communication whatever between the judge and the jury, except in open court with the defendant present, is prejudicial error entitling defendant to a new trial. Several early decisions are cited in which the language of the court tends to support this contention. But the holdings in such cases were discussed in *People* v.

*Brothers,* 347 Ill. 530, wherein an exhaustive review of the authorities on the present question was made, and the rule was announced that judgments will not be reversed when it is apparent that no injury has resulted from a communication to the jury, either by the court or by third persons. In that case the judge received from the jurors a request for information concerning a form of verdict submitted for use in case defendant was found guilty of manslaughter. In defendant's absence he thereupon withdrew the form of verdict from the jury. There had been no evidence in the case to warrant the giving of an instruction on that subject or a form of verdict concerning it, and the latter had been submitted through inadvertence. It was held that the action of the trial judge was not prejudicial error, and the judgment, entered upon a verdict finding defendant guilty of murder, was affirmed. In the case at bar the judge merely inquired as to the possibility of a verdict, and, in response to questions by the jurors, advised them to read their instructions, explained that any new ones would have to be made in the presence of defendant and the attorneys, and stated that defendant in signing the waiver did not admit performing an abortion. While the action of the judge in communicating at all with the jurors under these circumstances was highly imprudent, it is clear that the statements, in themselves, could by no possibility work an injury to defendant's interest. The communication was neither prejudicial to him nor calculated to influence the jury. Although we do not wish to imply the slightest sanction to such practices, we think that in view of its nature the present communication would not warrant setting aside the verdict or reversing the judgment. As we observed in the *Brothers case:* "Privacy of jury deliberations should be zealously protected against invasion, but the cardinal test on a motion to set aside a verdict on that ground is whether or not the invasion was calculated to influence the verdict of a jury. If it was not so calculated

it would be idle to disturb a verdict. Often it is practically impossible to prevent a juror from communicating with a trial judge, as when he approaches the judge and asks permission to telephone to his family or to say that he is sick. Surely, such harmless communications of themselves are an insufficient excuse for setting aside a verdict or reversing a judgment."

Defendant lastly urges that the evidence is such that it admits of but one of two conclusions, either defendant is guilty of murder or he is innocent; and that the court erred in giving a manslaughter instruction. In support of this contention he argues that the element of intent to commit the act when not necessary to save the mother's life being admitted by the waiver, any question of manslaughter was thereby removed from the case. We find no merit in the contention. The offense of involuntary manslaughter includes the killing of a human being without any intent to do so, in the commission of an unlawful act. (Ill. Rev. Stat. 1949, chap. 38, par. 363.) The waiver or agreement entered into in the trial court does not eliminate any of the elements of such offense from the case at bar. The intent therein stipulated was not an intent to cause death but was merely an intent to perform the unlawful act of causing an abortion when not necessary to save the mother's life. While the statute contemplates that persons performing such acts shall be guilty of murder when death results, it does not remove the offense from the definition of manslaughter. As we have heretofore construed the statutes, "they do not take the offense here charged out from under the definition of manslaughter, but define this and similar offenses, under certain conditions, to constitute also the more serious offense of murder." (*People* v. *Carrico,* 310 Ill. 543.) Defendant cannot complain that the jury convicted him of the lesser offense of manslaughter.

Upon examination of this record we are convinced that defendant has had a fair and impartial trial notwithstand-

ing the irregularity hereinabove discussed. It is not the purpose of a reviewing court to determine whether a record is perfect, but to determine whether the accused has had a fair trial under the law and whether his conviction is based on evidence establishing his guilt beyond all reasonable doubt.

Defendant has failed to show any prejudicial error, and the judgment of the circuit court of Sangamon County is, therefore, affirmed. *Judgment affirmed.*

Mr. JUSTICE BRISTOW, dissenting:

I am forced to dissent in this case because the majority opinion lends support to a decision (*People* v. *Brothers,* 347 Ill. 530,) which this court should overrule. On page 547 of the opinion in the *Brothers case* the court made the following pronouncement: "In each of these cases the conduct of the judge was calculated to influence the deliberation of the jury and therefore constituted reversible error, but no case is cited, and, indeed, we have not been able to find one, where this court has reversed a judgment because of an act or ruling of a judge which did not tend to influence the verdict of a jury." The cases referred to in the opinion were the following: *Crabtree* v. *Hagenbaugh,* 23 Ill. 289; *Chicago and Alton Railroad Co.* v. *Robbins,* 159 Ill. 598; *City of Mound City* v. *Mason,* 262 Ill. 392; *People* v. *Beck,* 305 Ill. 593; *People* v. *McGrane,* 336 Ill. 404. An analysis of those cases shows conclusively that the court misunderstood or misinterpreted their holdings on the question under consideration.

In *Crabtree* v. *Hagenbaugh,* 23 Ill. 289, after the jurors had retired to consider their verdict in a civil suit they sent for the judge, who repaired to their room and there had intercourse with them on the subject of the instructions which had been given them. In reversing a judgment the court said (289): "In this case, after the jury had

retired to consider of their verdict, they sent for the judge, who repaired to their room, and there had intercourse with them on the subject of the instructions which had been given them. This was manifestly done with no improper motive on the part of the judge, and it may be that it had no influence with them in the formation of their verdict. Indeed, the most the judge did, was to decline to explain the meaning of the written instructions which had been given to the jury. We choose to assume, that what was said and done by the judge, while in the jury room, did not influence the jury in their deliberations, for we think that, independent of its effect upon the jury, the judgment should be reversed, for the simple reason that such an interview did take place. If, in this case, no harm was actually done, and for that reason the verdict is allowed to stand, we open the door to the inquiry in all such cases, as to whether the party had been injured by the interview. Such an inquiry should not be tolerated. The policy of the law requires, that all the proceedings of the court should be open and notorious, and in the presence of the party, so that if he is not satisfied with it, he may take exceptions to it, in the mode pointed out by the law, and not be put to extraneous proof to show that an error has been committed in a secret proceeding, and, in fact, out of court."

In *Chicago and Alton Railroad Co. v. Robbins,* 159 Ill. 598, in a civil suit, after the jury retired to consider its verdict it sent a written communication to the judge inquiring, if the jury should find for the plaintiff, whether the damages should be assessed up to the commencement of suit or up to the present time. This inquiry was brought to the judge by the bailiff and the court wrote thereon and sent the same back by the bailiff, "Up to the present time." This was done while the court was in session but after counsel on both sides had retired from the court, and while neither of said counsel were present in court. There was a judgment in favor of the plaintiff and the

Supreme Court said that the proposition of law embodied in the direction of the court, when applied to the facts of the case in hand, was not erroneous, but reversed the judgment solely on the action of the court in sending the memorandum to the jury. In doing so they discussed *Sargent* v. *Roberts,* I Pick, 337 (Mass.), and also *O'Connor* v. *Guthrie & Jordan,* II Iowa, 80, both of which cases held that, regardless of prejudice, such communication was not permissible, and approved a statement in the Iowa case (601): "Indeed, the necessity for adhering to this practice with strictness is so manifest that argument in support of it is quite unnecessary. It may, at times, it is true, be attended with inconvenience; but better so than permit a practice so liable to abuse and so much in conflict with the rights of parties litigant."

The court then said that the decisions of this court are of like import and cited *Crabtree* v. *Hagenbaugh,* 23 Ill. 289, and *Fisher* v. *People,* 23 Ill. 218.

In *City of Mound City* v. *Mason,* 262 Ill. 392, in an opinion by Justice Dunn, a judgment in a civil suit was reversed where the court had gone to the jury room and made oral answers to several questions asked him by the jury in regard to appellant's rights, and the court said (399): "It is error, for which a judgment will be reversed, for a trial judge to hold any communication with the jury in regard to the instructions in the case except in open court. It is immaterial whether the instructions given were right or wrong. 'The policy of the law requires that all the proceedings of the court should be open and notorious and in the presence of the party, so that if he is not satisfied with it he may taken exceptions to it in the mode pointed out by the law, and not be put to extraneous proof to show that an error has been committed in a secret proceeding, and, in fact, out of court'."

In *People* v. *Beck,* 305 Ill. 593, a criminal case involving a misdemeanor, a judgment of conviction was reversed

in an opinion by Justice Dunn where the jury sent a note by the bailiff to the judge making an inquiry as to the right to manufacture liquor for one's own use before July 1, 1921. The judge, in the absence of the defendant and of his counsel, stated to the jurors that he could not instruct them orally in response to the inquiry and read to them an instruction. The court held that the instruction was erroneous but further held (596): "Regardless of the question of the correctness of the instruction the action of the court was error for which the judgment must be reversed."

The court then said (596): "The defendant was entitled to a public trial by jury, in every part of which he had a right to participate, to be present at every stage of the proceedings, to know everything that was done, to make objections, and to take such action as he might think best for securing his rights and for his protection. The law is well settled in this State that it is error for which a judgment will be reversed for a trial judge to hold any communication with the jury after their retirement to deliberate upon their verdict, except in open court." The opinion then copiously quotes from the opinions in *Chicago and Alton Railroad Co.* v. *Robbins,* 159 Ill. 598, *City of Mound City* v. *Mason,* 262 Ill. 392, and *Fisher* v. *People,* 23 Ill. 218.

In *People* v. *McGrane,* 336 Ill. 404, Justice DeYoung wrote an opinion reversing a conviction for assault with intent to commit murder. In that case the jury retired to consider its verdict at 5:30 P.M. Five hours later the officer in charge of the jury brought the following communication to the judge: "Honorable Judge, would it be a fair question to ask your honor the minimum and maximum sentence on both verdicts? C. W. Rimsnider, Foreman." The State's Attorney and counsel for the plaintiff in error were present at the time and the judge stated that the jury was entitled to an instruction on the question

asked. He directed the officer to bring the jury into the courtroom, and in the absence of the plaintiff in error gave the jury an instruction in the language of the statute on assault with intent to commit murder and the penalty therefore. Counsel for the plaintiff in error was present and excepted to the giving of the instruction. The judgment was reversed solely for this error of the court, and in doing so the court said (408): "Section 9 of the bill of rights prescribes that in all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel. Section 8 of division 13 of the Criminal Code (Cahill's Stat. 1927, p. 953; Smith's Stat. 1927, p. 1021,) provides that all trials for criminal offenses shall be conducted according to the course of the common law. By the common law the personal appearance of a person accused of a felony was required throughout the trial and it was also required that the record show the fact. (*Sewell* v. *People,* 189 Ill. 174; *Harris* v. *People,* 130 id. 457.) The plaintiff in error was entitled to a public trial by jury, at every stage of which he had the right to be present and in every part of which he had the right to participate for his protection. (*People* v. *Beck,* 305 Ill. 593; *People* v. *Harris,* 302 id. 590; *People* v. *Weinstein,* 298 id. 264; *Crabtree* v. *Hagenbaugh,* 23 id. 289; *Brown* v. *State,* 24 Ark. 620; *Roberts* v. *State,* 111 Ind. 340; *State* v. *Smith,* 44 Kan. 75; *Jones* v. *State,* 26 Ohio St. 208; *Hooker* v. *Commonwealth,* 54 Va. 763; 1 Bishop's Crim Proc.— 3d ed.—sec. 273; 2 Wharton's Crim. Proc.—10th ed.— sec. 1484.) The giving of the instructions to the jury is a part of the trial and the accused person has a right to hear the instructions read. Inquiry will not be made into the correctness of an instruction given in his absence, and the error is not cured by the presence of the defendant's counsel, since his attorney has no power to waive his right to be present in court. (*Bonner* v. *State,* 67 Ga. 510; *Maurer* v. *People,* 43 N. Y. 1; *Shipp* v. *State,* 11 Tex.

Crim. App. 46.) That right may only be waived by the defendant himself."

The unsoundness of the opinion in the *Brothers case* is clearly shown by the dissenting opinion of Justices Dunn and De Young, which points out the rule established in Illinois, and also in many other States, and the importance of the rule is stated in the dissenting opinion (561) : "If this single case were the only one to be affected by this judgment it might not be a matter of serious importance, but it is of serious importance if this case becomes a precedent. A strict compliance with the practice of having all proceedings in court in the presence of the accused and his counsel, with an opportunity to be heard at all stages of the trial, is a fundamental requirement of a jury trial in this State which has been maintained by an unbroken line of decisions. It is against the policy of the law of this State to indulge in secret communications between the judge and the jury, and for the failure to observe this fundamental requirement in jury trials, the judgment, in our opinion, should be reversed."

Counsel for the People cite some decisions of Federal courts of appeal holding that it is necessary that prejudice appear before there should be a reversal because of the court communicating with a jury after it retires to consider its verdict. However, in the case of *Brashfield* v. *United States,* 272 U. S. 448, 71 L. ed. 345, the Supreme Court calls attention to the fact that the decisions of the courts of appeal of the United States are conflicting, but, in a conviction for violation of the prohibition law, the Supreme Court, in an opinion by Justice Stone, followed the rule that has been adopted in Illinois and reversed a conviction because the trial judge inquired how the jury was divided numerically and was informed by the foreman that it stood 9 to 3, without indicating which number favored conviction. The reversal was upon that error of the court alone.

In *Shields* v. *United States,* 273 U. S. 583, 71 L. ed. 787, in an opinion by Justice Taft, a judgment of conviction for conspiracy was reversed where the error of the court was that, after the jury sent a written communication to the court that it found certain defendants guilty and was unable to agree as to three defendants, the judge sent back the communication with the following written reply: "The jury will have to find also whether Shields, Widman and Gastman are guilty or not guilty." This communication was not made in open court and neither the defendants nor their counsel was present, and afterwards the jury brought in a verdict finding all defendants guilty. The Court of Appeals affirmed but the Supreme Court reversed and called attention that such action of the trial court had been condemned in civil suits and said: "If this be true in a civil case, *a fortiori* is it true in a criminal case." In that case it also appeared that counsel for the government and the defendants had requested the court to keep the jury out until it agreed, but the court said that such request did not authorize the action of the court.

I am unable to discover any facts or reasons that would distinguish the *Brothers case* from the *Crabtree case.* The rule adopted by this court in the latter case in 1860 has been followed without interruption or deviation, with the exception of the *Brothers case.*

The reason for a continuation of the rule is obvious. If nothing is permitted to take place except in the presence of defendant and his counsel, then the defendant has full knowledge of anything and everything that happens that might influence the verdict. If the court is permitted to talk with the jury in the jury room in the absence of the defendant, then the defendant has no knowledge of what was said or done and would be at a disadvantage in proving that something improper took place. The remarks of the judge may be ever so harmless and innocuous but his manner might be indicative of something—a facial distor-

tion, a smile, a frown, a grimace—might conceivably indicate approval, disappointment or contempt which might adversely affect defendant's cause. A litigant would face great difficulty in showing such facts in proving their influence upon the jury. It surely is against the policy of a law of this State to impose upon a defendant in a criminal proceeding such a burden.

The temptation of courts to avoid rules of procedure or statutory law because of their effect on a particular case should be avoided. It is submitted that the best interests of all the people will be served if we continue to be a government of laws rather than a government of men and that courts should not assume the liberty of disregarding rules of law established for the protection of litigants because of the notion that the violation of the rule had no effect on the particular case.

In view of the foregoing, I respectfully disagree with the majority opinion.

Mr. JUSTICE MAXWELL concurs in the foregoing dissenting opinion.