**UNITED STATES of America**

v.

**William JACKSON, Appellant.**

**No. 12571.**

United States Court of Appeals
Third Circuit.

Argued June 3, 1958.

Decided June 26, 1958.

42

Hymen B. Mintz, Newark, N. J., for appellant.

Clyde A. Szuch, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a conviction on an eight-count indictment charging the defendant, William Jackson, with various violations of the federal narcotic laws. We do not need to particularize definitely. The charges covered the usual ones of selling and concealing in violation of 21 U.S.C.A. § 174 and 26 U.S.C.A. §§ 4704(a), 4705(a).

There are two points presented as bases for reversal. The first has to do with a question raised by the jury during the course of its deliberations. There was involved in this case an informer named Kennedy who was known to various witnesses and the defendant as "Sarge." The foreman of the jury, during its deliberations, asked the court, "Was the character known as 'Sarge' a government employee?" The judge doubted his power to comment on the evidence as to this matter. We need not decide the correctness of this view for, in any event, he also said that he did not remember. The jury, therefore, was sent back to resume its deliberations without any answer to its question.

Thereupon a colloquy between counsel and the court followed in which a sugges-

tion was made that those parts of the transcript dealing with this question be read to the jury. After a lengthy discussion during which government counsel expressed his opposition, the judge finally decided that he would have the portion of the transcript read which, we now know, showed that "Sarge" was, at the time of the alleged offenses, a paid government informer.

By the time the decision had been reached to let the jury have the information, that body had given notice that it had reached a verdict. In answer to a question from the judge, the foreman declared that they no longer had need of an answer to their earlier question. The verdict of guilty was thereupon returned.

The point of the jury's question was highly relevant. The court had just explained what entrapment was and on the matter of entrapment the question whether "Sarge" was a government employee was certainly something to be considered. In view of the circumstances present in this case, we think that the failure to permit the reading of the relevant testimony at a time when it would have been useful in the jury's deliberations created unfairness to the defendant.

■■ That the jury may be given information upon what a witness has said if it is possible to furnish it is well settled. See Annotation 1956, 50 A.L.R. 2d 176, 180. Usually the matter rests in the discretion of the court, United States v. Rosenberg, 2 Cir., 1952, 195 F. 2d 583, 598–599; United States v. Carminati, 2 Cir., 1957, 247 F.2d 640, 646; United States v. Campbell, D.C.N.D.Iowa 1956, 138 F.Supp. 344, but in this particular situation we think the defendant was entitled to have the jury informed as a matter of right. See Annotation 1956, 50 A.L.R.2d 176, 185;[1] cf. Henry v. United States, 6 Cir., 1953, 204 F.2d 817,

819 (reversal for permitting the repetition of testimony).

■■ The second question raised has to do with the refusal of the trial judge to allow defendant's counsel in summation to comment upon the fact that the Government did not call "Sarge" as a witness. He was not so called, why the record does not disclose. When counsel started to comment upon the point, the prosecuting attorney objected. The judge concluded that this witness was equally accessible to each party and, therefore, did not permit the comment. The Government does not object to the general rule as quoted from Graves v. United States, 1893, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021:[2]

"The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."

But it relies upon the often repeated exception to the rule and supports the district court's decision that this witness was equally available to either side.[3] The witness, it is claimed, had been in the court room for at least a portion of the trial. And it is said that the defendant who had admitted knowing "Sarge" could easily have found him had he wanted to do so.

This argument misses the point. Although the Government concedes that the question is not one of mere physical accessibility, the argument made in effect denies the admission. In this case it is pretty clear that the informer, whose connection with the alleged sales were testified to by the main Government witness, was an important part of the building up of the case, in which the defendant's conviction occurred. The chief

1. This annotation is an excellent general survey of the cases dealing with the right to have the reporter's notes read to the jury.

2. See also McCormick, Evidence 533–534 (1954); 1 Wharton, Criminal Evidence

263 (12th ed., Anderson, 1955); United States v. Lowe, 3 Cir., 1956, 234 F.2d 919, 923.

3. See 1 Wharton, op. cit. supra note 2, at 268–269; 2 Wigmore, Evidence 169–170 (3d Ed. 1940).

witness talked about "Sarge" and how "Sarge" had helped in the discovery of the law violation of the defendant. His presence was a natural part of the Government's case and certainly he was not the kind of witness that the defendant could be expected to call. We think that clearly his absence was a subject of proper and vigorous comment on the part of defense counsel. Cf. Morei v. United States, 6 Cir., 1942, 127 F.2d 827, 830. To deny him the privilege of bringing this very telling point to the jury deprived him of a substantial right.

The authorities in the law of evidence are pretty clear on this point. McCormick says:

"It is often said that if the witness is 'equally accessible' to both parties, no inference springs from the failure of either to call him. This can hardly be accurate, as the inference is frequently allowed when the witness could easily be called or subpenaed by either party. What is probably meant is that when so far as appears the witness would be as likely to be favorable to one party as the other, there will be no inference. But even here, it seems that equality of favor is nearly always debatable, and that though the judge thinks the witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary. At least, it would appear in this supposed case of 'equal favor,' if the witness's knowledge is directed toward a particular issue, that then the argument should be available against the party who has the burden of persuasion on that issue."[4] Wigmore says:

"It is commonly said that no inference is allowable where the person in question is *equally available* to both parties; particularly where he is actually in court; though there seems to be no disposition to accept such a limitation absolutely or to enforce it strictly. Yet the more logical view is that the failure to produce is *open* to an inference *against both parties*, the particular strength of the inference against either depending on the circumstances. To prohibit the inference entirely is to reduce to an arbitrary rule of uniformity that which really depends on the varying significance of facts which cannot be so measured. However, the term 'available' is not to be construed as meaning merely the accessibility for service of process. The determination of the question of equal availability may in a given situation involve the consideration of many factors. Such matters as one party's superior means of knowledge of the existence and identity of the witness, of the testimony that might be expected from him in the light of his previous statements, if any, with reference to the case are to be considered. It is manifest, therefore, that in passing upon this question of equal availability, the trial Judge is called upon to take into account all of the attendant facts and circumstances bearing upon the situation of the witness with relation to the parties, respectively."[5]

See, e. g., McClanahan v. United States, 5 Cir., 1956, 230 F.2d 919, 925–926; Samish v. United States, 9 Cir., 1955, 223 F.2d 358, 365.[6]

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

4. McCormick, Evidence 534 (1954).

5. 1 Wigmore, Evidence § 288 (3d Ed. 1940, Supp. 1957).

6. See also 1 Wharton, op. cit. supra note 2, § 145; Annotations 1949, 5 A.L.R.2d 895, 908–909, 911–917; 1941, 135 A.L.R. 1375, 1384.