THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALEXANDER LEWIS WOODALL, Defendant-Appellant.

(No. 69-95;

Third District—November 16, 1970.

Edward G. Bogt, of Kankakee, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Alexander Woodall appeals from a judgment entered in the Circuit Court of Kankakee County following a verdict of guilty by a jury on a charge of armed robbery and burglary.

Dandelles Lanes, a bowling alley in Kankakee, was robbed between 3:00 and 4:00 A.M. on the morning of May 19, 1969. The only person in the Lanes at the time it was robbed was Paula Jean Reynolds who was a deaf mute and unable to speak. Mrs. Reynolds was the chief witness for the prosecution and spoke by means of an interpreter by sign language. Mrs. Reynolds was employed by the owner of the Lanes as a cleaning woman. Her evidence was that at about 3:00 A.M. two men broke into the building, one short and the other one tall. The men had long guns, she stated, and tied her up with the tall man behind her, and they put her in a dark place. She worked herself loose and then the men came into the room again and tied her up again, this time in the standing position. The men were wearing stockings or socks over their heads. Mrs. Reynolds said that the socks came down to about the eyebrows. She stated at the trial that she thought she had seen the taller man before and she thought

he had bowled with her. She recalled seeing him about six weeks before the robbery. She pointed to the defendant Woodall as being that man. She further testified that after the men left she freed herself and finally called her employer making a sound which he recognized as her voice. Mr. Dandelles went to the Lanes and discovered the robbery and that $980 was missing from the safe. He had given no one authority to enter the premises and take the money.

On May 19, 1969, Mrs. Reynolds went to the police station to look at pictures of the men in the police files. She said she made no identification of the pictures of the men at that time. Thereafter, Mr. Dandelles signed a complaint against two men charging them with the crime (neither of which was defendant Woodall) and police subsequently learned that these two men were not in Illinois on May 19, 1969, and so that this complaint was dismissed. On June 13, 1969, after Mrs. Reynolds had identified a picture of Woodall, two detectives took Mrs. Reynolds to a fruit and produce store where defendant Woodall worked. Defendant was not at the store. In the process of riding back to the police station, the produce store truck was sighted and Mrs. Reynolds pointed out the defendant, who was driving that truck, as a man who had committed the robbery. Defendant was arrested and taken to the police station where a lineup was held with the defendant and four other men. Mrs. Reynolds then picked the defendant out as the man in the bowling alley on May 19, 1969. She testified in court, when she was asked by the police on May 19 to describe the men in the bowling alley, she said the taller man had a small mustache and something on his cheek similar to a mole. She stated that the two men had stocking masks over their faces and that they never removed them but she could see the face of one of the men through the mask and that the man was defendant Woodall. At the trial of the cause, a detective testified that when Mrs. Reynolds was shown the mug pictures on May 19, she picked out the two men who were originally named in the complaint (by Dandelles) which was later dismissed. She denied identifying the men from the pictures on May 19.

Another identification witness for the State was Dandurand, a dairy route salesman. He stated that he was driving past the entrance to the bowling alley about 3:30 A.M. on the morning of May 19, when a car pulled out from the bowling alley parking lot directly in front of him. He stated he could observe the driver of the car which was 12 to 15 feet in front of him and that the driver was defendant Woodall. He stated that he did not know the name of the driver at the time he saw him in the car, but that later he learned his name. After he learned of the robbery, Dandurand went to the police and related his story. Dandurand denied making any statement that he knew defendant when he saw him in the lights.

Defendant, his wife and a friend and his wife testified that they spent the day of May 18 together first at Mr. Woodall's parents' farm and then at the Woodall trailer. They stated that they played cards and did not go to sleep until around 5:00 A.M. on the morning of May 19 and did not hear anyone leaving the trailer. All parties were certain of the date as they remembered various events which occurred shortly before or after the evening of May 18 and the morning of May 19. Defendant testified that he bowled at one time in the same league with Mrs. Reynolds and remembered seeing her in the lanes. During the course of the trial, the prior conviction of defendant for grand theft was read into the record.

Our major concern on appeal revolves around the identification testimony of the chief witness for the State and a certain identification statement made at the jail after the trial of this cause. The key issue in the case was the question of identification of the defendant as being one of two robbers. The chief witness for the prosecution, as indicated, was Mrs. Paula Jean Reynolds. As noted, she is a deaf mute and had to testify and listen to questions by means of sign language.

Her story differed in some very material points. At one time she testified that the stocking masks worn by the men who broke into the bowling alley were down to their eyebrows. Later she testified that they had masks all over their faces, but she could see through them. In her original interview with the police she gave a description of the men and made no mention of any physical characteristics. Later, she stated that one man had a mustache and something like a mole on one of his cheeks. Mrs. Reynolds also testified that there were two men, one short and one tall, and her testimony as to the height of the taller man varies. She testified that on May 19, the day of the early morning robbery, she went to the police station and looked at about six pictures for the purpose of identification. The policeman who was with Mrs. Reynolds on the 19th of May testified he showed Mrs. Reynolds several hundred mug shots. He also stated that Mrs. Reynolds identified, from their pictures, two men as the ones she thought were in the bowling alley. Mrs. Reynolds denied this. A complaint was in fact sworn out against the two men, but it was found that they were not in Illinois on May 19, and the complaint was dismissed. Later, in June, Mrs. Reynolds picked defendant Woodall out of a police lineup of five men. She was present, however, when Woodall was arrested and had a chance to see him and note his appearance shortly before the lineup. Prior thereto, Mrs. Reynolds did point out the defendant as the man who was in the bowling alley, when she saw him driving the truck. It was noted, however, that Mrs. Reynolds knew the defendant whom she was attempting to identify; that he worked for the produce store; and she and the police had just been to the produce store prior to observing the de-

fendant while he was driving the produce truck down the street.

Defendant admitted that he had bowled in the Dandelles Bowling Lanes prior to May 19. Defendant stated that he had seen Mrs. Reynolds at the Lanes about six weeks prior to May 19. Mrs. Reynolds did not mention that she had recognized the defendant until about three days after the robbery, when she remembered that she had seen defendant in the bowling alley six weeks prior to the robbery. The robbery occurred on May 19, 1969, and the identification of defendant by Mrs. Reynolds actually occurred nearly a month later on June 13. Mrs. Reynolds at one time made a wrong identification of one of the men involved in the robbery, but, after seeing him, she stated that he was not one of the men. In her testimony, Mrs. Reynolds, during the trial, stated that she wondered why the shorter man let her see his face, and yet she identified defendant as the taller man. Her testimony at the trial was that the taller man (who she identified as the defendant) was behind her when she was tied up.

In the post-trial motion for new trial there was evidence of a further inconsistent identification on the part of Mrs. Reynolds. At the post-trial motion hearing, a deputy sheriff of Kankakee County, Lonnie Lamore, testified that while Woodall was an inmate of the County Jail, he was on duty at the desk in front of the jail. Lamore stated that a deaf and dumb, mute woman, who was the alleged victim of the Dandelles robbery came into the jail. He stated that this lady communicated to him by written notes, and she wrote down, "two men out front were with Alex Woodall on Dandelles Job". Lamore said he went out front and found two men and asked them to talk to the detective. He stated, however, that he did not know what happened after that.

■■■ In view of the identification testimony and the further identification statement made at the jail, it becomes vital that we give appropriate consideration to the problems inherent in such testimony and statement. The general rule regarding identification by a witness was set out by the court in *People v. Gardner*, 35 Ill.2d 564, at 571, where the court pointed out that in a criminal case it is incumbent upon the prosecution to prove beyond a reasonable doubt not only the commission of the crime charged but also the perpetration by the accused. The court points out that where from the entire record there is a reasonable doubt as to the guilt of the accused the judgment of the conviction should not be permitted to stand. The court specifically stated that where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, which does not produce an abiding conviction of guilt, it will be reversed. As stated by the Supreme Court of this State, in *People v. Gooden*, 403 Ill. 455, at 461:

"It is true this court has held that while the identification and where-

abouts of the defendant when the crime was committed are questions for the jury, yet where it can be seen from the entire record there is a reasonable doubt of the guilt of the defendant a judgment of conviction cannot be permitted to stand."

In the cause before us, there was a difference in the description of the defendant by Mrs. Reynolds the morning after the crime, as compared to her later description in the trial. Mrs. Reynolds mentioned at one time that the defendant had a mustache but her later description did not include a mustache. She also stated that defendant was wearing a stocking mask which either covered his face or at least came down to his eyebrows. She stated she could see through the mask, however. The mask was surely a factor which could affect identification. As stated in *People v. McGee*, 21 Ill.2d 440, at 444:

> "From the record before us, we are of the opinion that the circumstances under which the identity witnesses viewed the intruder presented great opportunity for mistake, and that the identity of the defendant as the perpetrator of the crime was not established beyond all reasonable doubt."

In the cause before us, Mrs. Reynolds had seen Alexander Woodall only a time or two in the bowling alley. She did not recall that Woodall was the man she saw in the robbery until three days after the robbery. All of this casts doubt upon her identification. Also, the testimony of deputy sheriff Lamore in regard to an exchange of notes with Mrs. Reynolds, considered in conjunction with her testimony, appears to justify granting of a new trial. Her statement at the jail was so definitive that it might change the result, if the case were retried. Defendant was convicted on the testimony of Mrs. Reynolds. Ever since the robbery, and through the course of the trial, she stated specifically that two men only were involved in the robbery. If she were now to say that there were actually three men involved, it might affect the truth and substance of the entire testimony. The statement was discovered after trial, as the event did not occur until after the trial was completed.

■■ Weaknesses in the identifications by Mrs. Reynolds and witness Dandurand become more significant when the alibi testimony is considered. Defendant and three people with him testified that defendant was in his trailer from about 9:30 P.M. on May 18 to about 11:00 A.M. on May 19. There was no evidence to refute the alibi except the testimony of Mrs. Reynolds and Dandurand. When identification is weak, the alibi becomes more important. As stated in *People v. Gooden*, 403 Ill. 455, 461:

> "Evidence of an alibi cannot be disregarded where the only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime charged, and while the identification and whereabouts of the defendant when the crime was committed are questions for

the jury, yet where, from the entire record, there is a reasonable doubt of the guilt of the defendant because of the uncertainty of identification, the conviction cannot stand."

■■ The conviction of the defendant in the cause before us was the result of the testimony of Mrs. Reynolds. Because of her inability to speak except by sign language, there was much question about her testimony and her identification of defendant. There were a number of discrepancies in such testimony. If she where now to come forward and say under oath that there were actually three men involved in the robbery, this would cast doubt on all her testimony. As stated in *People v. Cotell,* 298 Ill. 207, where newly discovered evidence affects the credibility of the testimony of a material witness it would be a strong reason for granting a new trial. (*People v. Cotell,* 298 Ill. 207, 217). In view of the statement of Mrs. Reynolds at the jail after the trial and the nature of her prior testimony a new trial should have been granted in this cause on defendant's motion.

■■ Another question which is presented in this cause is whether it was erroneous to allow testimony of the police officer showing that at the time defendant was arrested, defendant was asked if he wished to talk to which defendant answered, "No." This was improper under the precedent of *People v. Rothe,* 358 Ill. 52, 57. In view of the fact that there was no overwhelming evidence of defendant's guilt it was erroneous to introduce the evidence of the response of the defendant and refusal to make a statement at that time.

While there were other questions raised by defendant as a basis for reversal we do not believe that any of the points raised would justify reversal or that it is necessary to discuss such points in view of our determination that this cause should be remanded for new trial. For the reasons stated in the course of this opinion, this cause is reversed and remanded to the Circuit Court of Kankakee County for a new trial.

Reversed and remanded.

RYAN, P. J., and STOUDER, J., concur.