## PEOPLE *v.* CALHOUN

## PEOPLE *v.* COVINGTON

1. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE.
   Defendant was not denied the effective assistance of counsel by failure of his appointed attorney to learn of and develop the fact that about an hour before an armed robbery of a clothing store with which defendant was charged, defendant saw the policeman who later arrested him ticketing the car in which he was arrested, where the details of the ticketing incident would not help defendant's story that he was outside the clothing store waiting for two men who, unknown to him, were committing the robbery.

2. TRIAL — CROSS-EXAMINATION — CONJECTURAL QUESTIONS — DISCRETION.
   Sustaining an objection to a question resting on a hypothesis nowhere near resembling the testimonial facts is within the trial judge's discretion.

3. CRIMINAL LAW—TRIAL—CROSS-EXAMINATION—CONJECTURAL QUESTION—IDENTIFICATION TESTIMONY.
   Sustaining an objection to defense counsel's question asked of the victim of the robbery charged whether he had ever said hello to someone and then found out it was not the person he thought it had been was proper where the whole record establishes that the victim's identification of the defendant was totally unequivocal.

4. CRIMINAL LAW—RIGHT TO REMAIN SILENT—PRIOR NON-UTTERANCES—PROSECUTOR'S QUESTIONS.
   A defendant who takes the stand may be questioned by the prosecution concerning prior inconsistent utterances and prior

REFERENCES FOR POINTS IN HEADNOTES

[1]  21 Am Jur 2d, Criminal Law § 315.
[2, 3]  58 Am Jur, Witnesses §§ 554, 565, 566.
[4]  30 Am Jur 2d, Evidence §§ 611, 612.
[5]  21 Am Jur 2d, Criminal Law §§ 357, 358.

inconsistent non-utterances, statements not made while in custody, but made at trial.

5. CRIMINAL LAW—RIGHT TO REMAIN SILENT—SILENCE WHILE IN CUSTODY—NON-UTTERANCES—PROSECUTOR'S QUESTIONS.

   Prosecutor's asking defendant if he had told the police about a man who defendant claimed at trial had forced the defendant to commit the robbery charged, was not violative of defendant's right to remain silent where defendant introduced the issue of the other man, because, otherwise, a defendant could rely on any hypothesis however nebulous, and yet the prosecutor would be barred from subjecting the testimony to truth-testing devices.

Appeal from Recorder's Court of Detroit, George W. Crockett, J. Submitted Division 1 March 2, 1971, at Detroit. (Docket Nos. 10124 and 10407.) Decided April 26, 1971. Leave to appeal denied, 385 Mich 765, 770.

Watt Calhoun was convicted of armed robbery. Defendant appeals. Lee Covington was convicted of armed robbery. Defendant appeals. Cases consolidated by the Court of Appeals. Affirmed as to both defendants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Jane Burgess* (State Appellate Defenders' Office), for defendant Calhoun on appeal.

*Carl Ziemba,* for defendant Covington on appeal.

Before: V. J. BRENNAN, P. J., and QUINN and O'HARA,* JJ.

_____

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6 § 23 as amended in 1968.

O'HARA, J.    Having waived jury trial, Watt Calhoun and Lee Covington were convicted by the trial judge of robbery armed.    MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797).    On these appeals of right, their cases were consolidated on our own motion.

Defendant Calhoun assigns two errors: (1) that ineffectual representation deprived him of his constitutional right to counsel, and (2) that reversible error was committed when the trial court unduly restricted cross-examination of the complaining witness regarding his ability to identify those who perpetrated the robbery.

As his only ground for appeal, defendant Covington asserts that his Fifth Amendment rights were violated when the prosecutor inquired as to whether defendant had made exculpatory statements to the arresting officers.

Both defendants were positively identified by the proprietor of a clothing store, Mr. Whitlow, as the persons who had robbed him at gun point, carrying off wearing apparel from the premises after tying him up.    Upon freeing himself, Whitlow courageously, if somewhat incautiously, pursued the defendants outside.    He then attracted the attention of a nearby policeman and described the happenings hereinbefore detailed.    The possibility of misidentification was minimized since the officer had previously observed defendants in front of the store and Whitlow, furthermore, pointed out the automobile he saw the defendants enter.    After approaching the parked vehicle and arresting defendants sitting therein, a routine search disclosed the presence of a revolver and various items of clothing.    A search of Calhoun's person also revealed a sizeable amount of cash.

At the trial, testimony was offered by defendants which purported to show that one "Billy" had advised the defendants that he knew where the purchase of clothing could be very advantageously made. Acting upon this information, Covington, it was claimed, had accompanied "Billy" into the store where he (Billy) produced a revolver and compelled Covington's participation in the robbery. Except for a brief period during which growing impatience led him to leave the automobile temporarily, Calhoun supposedly remained in the car awaiting their return. About an hour before the robbery, Calhoun observed an officer in the process of ticketing the automobile. This was the same officer who later made the arrest.

As his first assignment of error, Calhoun claims that an inadequate amount of time spent in consultation led to his appointed counsel's failure to learn of the ticketing episode before it was brought out on cross-examination by the prosecuting attorney. The ticket (or more accurately a copy thereof) was admitted without objection as defendant's Exhibit # 1.

The precise error alleged is, and we quote appellant's brief:

"This evidence [the parking ticket] was not developed further. Obviously defense counsel had given no thought to its implications. Defendants' version of the facts was that he was outside of the clothing store waiting for the other two men who, unknown to him were perpetrating the robbery. In such situation the actions of the defendant, along with any evidence to verify his story would be critical."

We profess to no occult powers in fathoming the mental processes of the trier of the facts, in this

case the trial judge, but it is difficult for us with our limited insight to see how the fact that this defendant saw an officer ticketing the car of which he and the other defendant were occupants when arrested, and in which was found some of the clothing taken from the store at gun point, would help his case. The ticketing occurred, according to defendant, "about an hour" *before the arrest.* The car was in the same place as before the ticket was issued. We can easily visualize defense counsel asking himself how many more nails he should drive into his client's defense casket by "developing the evidence further". We find no merit whatsoever in the claimed error.

The second error assigned is the trial judge's sustaining an objection to the following question and his stated reasons therefor. The question was posed by defense counsel in an apparent attempt to discredit the identification by the store owner.

"*Q.* Did you ever say hello to someone, then find out it wasn't the person you thought it was?

"*Mr. Lauck (prosecuting attorney)*: I'm going to object to that, your Honor. That's so vague I don't understand it myself.

"*Mr. O'Connell (defense counsel)*: It's not vague.

"*Mr. Lauck:* And it's immaterial, as well, and merely conjectural.

"*The Court:* I sustain the objection.

"*Mr. O'Connell:* That would go to the question of his ability to identify, your Honor.

"*The Court:* I sustain the objection."

Read alone, and out of context with the rest of the examination, the quoted excerpt might have given us pause. Reference to the whole transcript of testimony concerning the identification establishes that the storekeeper's identification was totally unequivocal.

He testified he could see under the tape which the perpetrators of the holdup placed over his eyes and that he watched them remove the clothes from the racks and cases.

It is well within the discretion of a trial judge to sustain an objection to a question resting upon a hypothesis nowhere near resembling the testimonial facts. We find no merit in this ground stated by appellant Calhoun.

We turn to the appeal of defendant Covington. His claim of error is that prejudicial error was committed in his own cross-examination and the cross-examination of defendant Covington. We quote from his brief the involved testimony:

"*Q.* [*Prosecuting attorney*]: When was the first time you ever told anybody this story about this man named Billy?

"*A.* Well, when I had Attorney Long.

"*Q.* You told your attorney-at-law?

"*A.* The other attorney.

\*          \*          \*

"*Q.* Did you ever tell any of the police officers that arrested you this (sic)?

"*A.* No, I didn't."

On cross-examination of defendant Watt Calhoun, the prosecutor interrogated as follows:

"*Q.* You never saw Billy anymore that day?

"*A.* I never saw him anymore since, period. I have been in custody ever since.

"*Q.* Did you tell the police that Billy put those things in the car?

"*A.* I didn't tell the police anything."

There were no objections from defense counsel to these questions.

Without addressing ourselves to the right of the prosecuting attorney to try to tie down the existence

of the elusive, if not completely ephemeral, "Billy" who enters on stage and exits without lines, and without ruling as to whether or not the error, *if any,* was preserved, we merely state that we may be the first state appellate court to apply the holding of the United States Supreme Court in *Harris* v. *New York*[1] to this kind of situation.

Defendant asserts that the questions asked violated his Fifth Amendment right to remain silent in face of an accusation without later reference thereto by the prosecution and cites the *Miranda* rule.[2]

We quote from *Harris, supra.*

"Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.

\*　　\*　　\*

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."

We read *Harris* to include inconsistent "non-utterances" as well as "utterances". When defendants introduced "Billy" into the act, it was perfectly proper to question him as to the point at which he first mentioned "Billy's" complicity in the occurrence.

The adversary process should certainly permit cross-examination as to a defense theory which without any challenge would permit a testifying accused to rely on any hypothesis however nebulous,

[1] *Harris* v. *New York* (1971), 401 US 222 (91 S Ct 643, 28 L Ed 2d 1).

[2] *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

and yet bars the prosecution from subjecting the specifics of it to "truth-testing devices".

We find no reversible error in the claims of either defendant. The judgments of conviction in both cases are affirmed.

All concurred.