THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM QUEEN, Defendant-Appellant.

(No. 71-143;

Third District—December 7, 1972.

STOUDER, P. J., dissenting.

John L. Barton, of Defender Project, of Ottawa, for appellant.

Joseph Polito, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, William Queen, was indicted for the offense of burglary and after trial by jury was found guilty and sentenced to a term of not less than three nor more than ten years in the penitentiary. The sentence was to be served consecutively with a sentence of not less than one nor more than three years in the penitentiary which had previously been imposed upon the defendant by the circuit court of Perry County.

During his trial the defendant testified in his own behalf and while he did not deny that he made an unauthorized entry into Gene's Tavern in the city of Joliet, he offered as an explanation for his acts that he had been compelled to act as a "look out" man for a Lawrence Bryan, who was the instigator of the crime and who actually made the illegal entry into the tavern.

The defendant further testified to the effect that being an unwilling accomplice it was his intention to report the burglary as it was in progress, then slip away thereby leaving the instigator and his tormentor trapped inside the tavern. The defendant stated that his plan was thwarted when Bryan came out of the tavern as a police patrol car cruised by the area and that in order to escape apprehension he was forced to hide in the tavern. When he attempted to leave the building he was apprehended by the police.

The defendant claims reversible error based upon the following incidents which occurred during his trial.

During the course of the trial the State's Attorney brought out on cross-examination that the defendant had at no time ever related this story to the police, but was telling it for the first time when testifying in his own behalf. The trial court denied the defendant's motion for a mistrial based upon this cross-examination.

During the jury deliberations the foreman sent a note to the court which said, "Would like the defendants words on the stand." The trial judge denied this request.

Lastly, when the trial judge denied the jury's request to again hear

the defendant's testimony the defendant was not present and he alleges that his absence constitutes error since he was denied the right to be present at every stage of the proceedings.

■■ Directing our attention to the first issue raised by the defendant it is clear that his contention that reversible error was committed is based upon the premise that when arrested a defendant has a right to remain silent and if the state elicits testimony that he exercised such a right then we have a violation of his testimonial privilege and his right to effective assistance of counsel. In support of this contention the defendant cites the following Illinois cases: *People v. Rothe*, 358 Ill. 52, 192 N.E. 777; *People v. Lampson*, 129 Ill.App.2d 72, 262 N.E.2d 601; *People v. Woodall*, 131 Ill.App.2d 662, 264 N.E.2d 303. An examination of these cases reveals that they are not relevant to the issue before us since they involve testimony to the effect that the defendant had refused to make a statement to the police after his arrest. Our Illinois courts are in unanimous agreement that such testimony is erroneous and prejudicial to the defendant. In the instant case we are presented with a different facet of the problem in that we are called upon to determine whether or not the defendant waives his protection against self-incrimination when he takes the witness stand and testifies in his own behalf by making an exculpatory statement. May then the prosecutor by cross-examination elicit testimony that the defendant had not previously made such a statement to the police? May the prosecutor during final argument comment on defendant's failure to make such an exculpatory statement to the police or to anyone else prior to the time he testified in his own behalf?

We find no Illinois cases to guide us in our determination of this precise issue, however, there are pertinent decisions from other jurisdictions. In support of his contention that reversible error was committed he cites the cases of *State v. Stephens*, 24 Ohio St.2d 76, 263 N.E.2d 773; *United States v. Nolan* (CA10-1969), 416 F.2d 588; and *United States v. Brinson* (6th Cir., 1969), 411 F.2d 1057. We quarrel not with the defendant's interpretation of the law as set forth in these cases. They strongly support his argument and in *Stephens* the Supreme Court of Ohio after citing and analyzing the cases of *Brinson* and *Nolan* stated:

> "The right of silence, while singular in the constitutional grant, may be plural in application. That right, once invoked by an accused while under accusation, is not waived by reason of defendant testifying at the trial."

The cases of *Stephens*, *Nolan* and *Brinson* all predicate their reasoning and holdings upon *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, wherein our United States Supreme Court held that an accused when taken into custody has the constitutional right to remain

silent and refrain from making either "exculpatory or inculpatory" statements and that this privilege is fulfilled only when the person is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will."

As stated by Chief Justice Warren in *Miranda* the United States Supreme Court was directing its attention to and specifically dealing with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation. In *Miranda* the court laid down strict rules regarding defendant's right to counsel and his right to remain silent. However, it should be noted that the court was concerned with these rights only as they arose during the custodial, pre-trial interrogation state of the proceedings of an accused.

That *Miranda* was so limited in its application was recognized in a subsequent case when the United States Supreme Court stated in *Harris v. New York,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643:

"Some comments in the Miranda opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling. Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from Miranda that evidence, inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."

In the instant case the defendant makes no claim that his right against self-incrimination was violated when he was apprehended or at any time prior to trial but maintains that when he made an exculpatory statement during trial, his testimonial privilege continued so that the state was precluded upon cross-examination from attempting to impeach him by asking if he had previously made such a statement to the police.

As we have acknowledged, the cases of *Stephens, Brinson* and *Nolan* support the defendant's position, but we are of the opinion that these cases extended an interpretation to *Miranda* which was not intended by our United States Supreme Court. In *People v. Calhoun,* 33 Mich.App. 141, 189 N.W.2d 743, we have a strikingly similar factual situation and during the course of the trial the defendant testifying in his own behalf made an exculpatory statement to the effect that he and a co-defendant were duped into committing the crime by a third party. The prosecutor on cross-examination asked the defendant when was the first time that he had told anyone the exculpatory statement that he had just related on direct examination. The defendant stated that he had told his attorney.

When asked by the prosecutor if he had ever told the police, he stated that he had not.

In *Calhoun* the Michigan reviewing court held that such cross-examination by the prosecutor did not constitute reversible error and we quote:

> "The adversary process should certainly permit cross-examination as to a defense theory which without any challenge would permit a testifying accused to rely on any hypothesis however nebulous, and yet bars the prosecution from subjecting the specifics of it to 'truth-testing devices.'"

In *Calhoun* the court relied on the decision of the United States Supreme Court in *Harris v. New York*, 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643, where it was held that a statement inadmissible against a defendant in the prosecution's case in chief because of lack of procedural safeguards required by *Miranda* may, if its trustworthiness satisfies legal standards, be used for impeachment purposes to attack the credibility of defendant's trial testimony. It is clear that in *Calhoun* the Michigan court interpreted *Harris* as including inconsistent non utterances as well as utterances as being permissible for the use of impeachment purposes in attacking the credibility of a defendant's trial testimony. With this interpretation we agree. In *People v. Russell*, 27 Mich.App. 654, 183 N.W. 2d 845, the prosecution commenced a line of questioning which made reference to defendant's previous silence after he made an exculpatory statement during trial. Such cross examination was not held to be prejudicial and the court in considering the matter of the prosecution referring to the defendant's prior silence stated:

> "Since the decision in Miranda v. Arizona [Citation.] it is clear that silence in communicating to police officers can no longer be used as an admission against interest. But there is nothing in Miranda that forbids such cross examination once the defendant has chosen to testify. As Judge Learned Hand stated in United States v. St. Pierre (C.A.L., 1942), 132 F.2d 840:
>
>> 'It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it. * * * It should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition.'"

The issue which we are now considering was clearly resolved in the *Harris* case when the United States Supreme Court stated:

> "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. * * * Having

voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. * * * The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."

Being mindful of the sharp division of authorities on the question before us we are nevertheless of the opinion that the better reasoned authorities are the cases of *Calhoun* and *Harris* and that reversible error was not committed in the instant case by the prosecutor's cross-examination in regard to defendant's exculpatory statement nor by his reference to it during final argument. See also *Walden v. United States,* 347 U.S. 62, 98 L.Ed. 503, 74 S.Ct. 354; *People v. Speed,* 52 Ill.2d 141, 284 N.E.2d 636; *People v. McCorry,* 51 Ill.2d 343, 282 N.E.2d 425.

■■■ We next direct our attention to the contention of the defendant that the trial court erred in denying the request of the jury to once again hear the testimony of the defendant. At the outset it should be noted that our state does not have a statute pertaining to the reading of testimony to a jury after they have retired to deliberate upon their verdict. In the absence of such a statute we do not believe that the defendant has an absolute right to have testimony repeated. (See *State v. Vaughn,* 265 P.2d 249; *State v. Close,* 148 A. 764.) Even where such a statute is present it has been held that it is not mandatory that the trial judge state his recollection of testimony or that testimony be read to the jury and the court's refusal to comply with the defendant's request and have certain testimony repeated was not an abuse of discretion. (*State v. Weil,* 56 Ohio L. Abs. 136, 91 N.E.2d 277, appeal dismissed 153 Ohio St. 586, 92 N.E.2d 816.) After an analyzation of the cases cited in the briefs submitted by the parties to this appeal and further considering the comprehensive analysis of the question presented in 50 A.L.R.2d 176 we are of the opinion that the better rule is that whether in a particular case certain portions of the testimony should be read to the jury rests in the discretion of the court.

The defendant stresses that the paramount issue for the jury to decide in the instant case was the credibility of his testimony and that the trial court refused to permit the jury to review evidence which related directly to this issue. The state argues that to permit the jury to hear a repetition of the defendant's testimony would be giving undue prominence to it over other testimony.

■■ In examining the record we fail to find that the trial of the defendant was of such complexity or fraught with technicalities that would

serve to confuse a jury. Neither the testimony of the defendant or any other witness was lengthy. The trial judge was in the best position to determine whether or not there was a necessity for the jury to hear a repetition of the defendant's testimony. He deemed such a procedure was unnecessary and in the light of the record before us we do not find that the court's refusal was an abuse of discretion.

■■ Lastly the defendant assigns as error that he was denied his right to a trial by jury when the judge communicated with the jury outside of his presence. The defendant is referring to the incident where the trial judge refused the jury's request to again hear his testimony. When the judge made his refusal the defendant was not present and he contends that his absence violated his constitutional right to be present at every stage of the proceedings against him.

The discussion, if in fact the judge's refusal could be so classified, was a matter which was procedural and the defendant's absence did not infringe upon his right to be present during the proceedings against him. (*People v. Hudson,* 46 Ill.2d 177, 263 N.E.2d 473; *People v. Woods,* 27 Ill.2d 393, 189 N.E.2d 293.) Also determinative of the issue raised is the case of *People v. Miller,* 13 Ill.2d 84, 148 N.E.2d 455. In *Miller* a juror in a case involving prosecution for murder requested a bailiff to tell the judge that the jury wanted more information on a life sentence, and the judge sent word by the bailiff that he could not give any information. Our supreme court held that such a reply would not be deemed a communication to the jury outside the presence of the defendant. We believe that the cases cited are dispositive of the defendant's contention which we deem to be without merit.

For the reasons set forth the judgment of the circuit court of Will County is affirmed.

Judgment affirmed.

DIXON, J., concurs.

Mr. PRESIDING JUSTICE STOUDER dissenting:

I do not agree with the majority of the court. In my opinion prejudicial trial errors occurred requiring a new trial.

As indicated in the majority opinion the jury after deliberating some time delivered a note to the bailiff who in turn delivered the note to the trial judge. The note read, "Would like the Defendant's words on the stand." Whatever transpired upon receipt of the note was not transcribed by the court reporter and the only reference to what may have happened is contained in a supplemental record filed by the State which contains an account by the trial judge. Other than indicating that the

State's Attorney and defense counsel were present and that the defendant was not, the account has no particular bearing on the judge's response to the jury's request. The judge wrote the following on the note and had it returned to the jury, "You must decide on the basis of the testimony heard in the courtroom. I can not have any testimony of any witnesses read to you."

My colleagues have concluded and I agree with the conclusion, that whether derived from statute or rule of law the trial judge does have discretion to respond to and reply to jury inquiries. Indeed no case to the contrary is cited in the opinion of the majority or was cited in the brief of the State. Thus the trial judge was in error when he determined he had no discretion to grant the jury's request.

*People v. Harmon,* 104 Ill.App.2d 294, 244 N.E.2d 358, although not dealing with the rereading of the testimony of a witness, presents somewhat analogous circumstances and the language of its holding would seem to be equally applicable to the instant case. In *Harmon,* according to the bailiff, he was summoned by the jury and asked some legal questions which he declined to answer. He then reported the inquiry to the judge indicating that the jury had legal questions but not specifying any particular question. The judge requested that the attorneys be called but when informed that they were not there the judge directed the bailiff to return to the jury and "Tell the jury the legal questions will be resolved by the Court. They have the problem of the facts. They have all the Instructions." It developed that the jury was concerned whether a homicide would be murder or accidental when the defendant aiming his gun at one person accidentally discharged the same resulting in the death of a third person. As may be seen from an account of the foregoing facts in the *Harmon* case the request by the jury related to instructions and the court concluded both that an instruction covering the inquiry had not been given and that the trial judge should have responded to the jury's inquiry. In this connection it should be noted that the court not only held that the additional instruction or advice should have been given but that error occurred where the judge knowing of some questions in the jurors' minds failed to ascertain what the problem was. Such a conclusion is broad enough to include all requests for information by a jury and requires assistance by the judge whenever possible even to the extent of seeking to clarify the doubts which the jurors may express. See also *People v. Kucala,* 7 Ill.App.3d 1029.

Conceding the trial judge has discretion to comply with the request of the jury, my colleagues contrary to the trial judge's own determination that he had no discretion, conclude that he did not abuse his discretion citing, *State v. Vaughn,* 265 P.2d 249; *State v. Close* (1930), 148 A. 764;

and *State v. Weil*, 56 Ohio L. Abs. 136, 91 N.E.2d 277. The three cases do have a basic similarity in that in each case the trial judge rejected the jury's request because the judge believed he had no authority to comply therewith and in each case the court of review concluded the judge had not abused his discretion ignoring the fact that no discretion had been exercised.

In *State v. Wolf*, 44 N.J. 176, 207 A.2d 670, the court expressed views on this subject which at least by implication reject the reasoning in the earlier New Jersey case of *State v. Close*, 148 A. 764. With respect to a request of the jury concerning two letters written by a witness and his cross examination with respect thereto the court in *Wolf* observed:

"When a jury retires to consider their verdict their discussion may produce disagreement, doubt, or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice requires such action. Where there is some doubt in the minds of the jurors as to what a witness said, it cannot be prejudicial to anyone to have that doubt removed by a rehearing of the testimony of the witness. If under one system of trials a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories refreshed only as to those portions of the testimony about which they are in disagreement. If they do not ask for further reading there is no right in a party to demand it."

The court also declared:

"In these days when the purpose of our procedure is full, fair and free exposure of all relevant evidence in a case both before and during the trial, there is no just reason for insisting that laymen jurors must have an unfailing and unanimous memory of all the testimony they hear in the courtroom. There should be substituted for any seeming hesitency in the past [citation] the enlightened discretion of our trial judges."

During its deliberations the jury in *U.S. v. Jackson*, 257 F.2d 41, through its foreman asked the court whether a character named "Sarge" who had been mentioned during the trial was a government employee. The case involved prosecution of the defendant for violation of Federal narcotic laws and "Sarge" although not a witness was involved in the transaction and according to the record was a paid informer at the time. However the trial judge doubted his authority to respond to the request and in any event did not remember the fact requested. The jury there-

upon retired again but after an exchange of remarks by government counsel and defense counsel the court concluded that the portion of the testimony dealing with this subject should be reread to the jury. However the jury returned its verdict finding defendant guilty before the testimony could be reread and on review it was held the trial judge committed prejudicial error in declining to comply with the jury's request. Relying on such cases as *United States v. Rosenberg,* 195 F.2d 583 (2d Cir.) *cert.* denied 344 U.S. 838, 73 S.Ct. 21, 97 L.Ed 687, the court said, "that a jury may be given information upon what a witness has said if it is possible to furnish it is well settled." The court in *Jackson* concluded the failure to permit the reading of the relevant testimony at a time when it would have been useful in the jury's deliberations created unfairness to the defendant. The American Bar Association Standards Relating to Jury Trial, approved draft, Section 5.2 in a section dealing with Jury Deliberations and Verdicts, provides;

"5.  Jury request to review evidence.

(a)  If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the Court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to the jury and shall permit the jury to re-examine the requested materials admitted into evidence.

(b)  The Court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the Court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested."

The foregoing provisions have of course not been approved or adopted by statute, rule or decision in this State. However the provisions are deemed to be expositive of the generally prevailing rules on the subject. In the commentary to the tentative draft of the foregoing standard (pages 134-138) the committee emphasizes that the judge ought to assist the jury by compliance with the request whenever possible and should exercise his discretion not to do so only when the request is unreasonable. The committee concluded it was undesirable and unfair to relegate the jury to the confusion of its recollections when the means were at hand to avoid unfairness. Rejecting the contention that rereading testimony might unduly emphasize certain aspects of the evidence the committee observed that special attention to the disputed testimony had already occurred and efforts to enlighten the members of the jury could hardly be other than beneficial.

In *People v. Prim,* 53 Ill.2d 62, the Court concludes that where the jury had reached an impasse but were not seeking further assistance or enlightenment the court should respond and not abandon the jury to its own devices even though the court's observations must be inherently neutral at such a sensitive stage of the proceedings. The case is mentioned not because of its direct relevance to the issue in the instant case but rather in support of the general rule which ought to have been applied by the trial judge namely the need of the trial judge to respond cooperatively and affirmatively to the jury's request for assistance.

Whether the prejudicial effect of the judge's ruling in this case be considered as a result of his determination that he had no authority to grant the request or that he somehow or other exercised his discretionary authority it is my opinion the judge's refusal to have the defendant's testimony reread was prejudicial and unfair. Indeed the sole issue in the case was the credibility of the defendant's testimony judged primarily for its plausibility or implausibility. That the jury did have some problem concerning defendant's testimony is undisputed. The opinion of my colleagues that the jury should have had no such problem or that enlightenment was unnecessary is contrary to the facts and speculative. The request of the jury was reasonable and could have been readily satisfied without inconvenience.

Related to the foregoing issue is the defendant's claim that he was denied his right to be present at all stages of his trial. By relying on *People v. Miller,* 13 Ill.2d 84, 148 N.E.2d 455; *People v. Woods,* 27 Ill.2d 393, 189 N.E.2d 293 and *People v. Hudson,* 46 Ill.2d 177, 263 N.E.2d 473, my colleagues treat this issue as involving merely a discussion which took place in chambers after the note from the jury was received. The *Miller* case involved a contempt citation against defendant's counsel which occurred after a mistrial had been declared and before a new trial had been held. In *Woods* the court concluded that a pre-trial motion for continuation or advancement on the docket was not of such a nature as to require defendant's personal attendance. Finally in the *Hudson* case counsel for a co-defendant moved for a mistrial and finding of contempt against a witness (appealing defendant did not join in the motion) and the court held that a hearing conducted in chambers on such motion in the absence of the defendant was proper.

However the real issue is not the hearing in chambers but rather the communication between judge and jury in the absence of the defendant. The discussion in chambers being of course a part of the transaction. In *People v. Beck,* 305 Ill. 593, 137 N.E. 454, the Court stated;

"The defendant was entitled to a public trial by jury, in every

part of which he had a right to participate, to be present at every stage of the proceedings, to know everything that was done, to make objections, and to take such action as he might think best for securing his rights and for his protection. The law is well settled in this state that it is error for which a judgment will be reversed for a trial judge to hold any communication with the jury after their retirement to deliberate upon their verdict, except in open court."

In *People v. Harmon,* 104 Ill.App.2d 294, 244 N.E.2d 358, the facts of which case are detailed earlier in this opinion, the court concluded:

"In any event, the procedure followed by the trial court in its communication with the jury outside the presence of the defendant and his attorney was, in itself, sufficiently prejudicial to require reversal of the conviction."

The communication between judge and jury in the *Harmon* case is indistinguishable from the communication in the instant case and consequently I believe the procedure in the instant case was erroneous. This aspect of the case is so related to the conduct of the judge in refusing to respond to the jury's request that it adds additional support to my belief that prejudicial error occurred.

With respect to the other issue discussed by my colleagues and the holding that the cross examination of defendant regarding his silence at time of arrest was proper there is no doubt but that *People v. Calhoun,* 33 Mich.App. 141, 189 N.W.2d 743, and *United States v. Ramirz,* 441 Fed. 2d 950, are clearly on point and support the position of the majority. It can also be said that each case represents an application of the exception to the *Miranda* rule created in *Harris v. N.Y.,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643. The implications of the *Harris* case are still somewhat shadowy but if given a broad application it may well require the result reached by the majority. Yet I believe there is a distinction between the facts in this case and those in *Harris* which weakens the persuasiveness of *Harris* as a controlling authority. This difference arises and is apparent from the majority opinion because of the necessity to equate a "nonutterance" with an "utterance". In other words silence is deemed to have the same legal characteristics as a statement whether inculpatory or exculpatory, a conclusion which I believe is erroneous.

The probative value of silence or refusal to speak depends on the common experience that an assertion of misconduct will spontaneously invite a denial or protest of innocence. Where the circumstances are such that no response is required or expected the reasons for such silence having any tendency to prove guilt disappear. This principle does not depend either on the application or non-application of the *Miranda* rule. As

the court observed in *People v. Rothe* (1934), 358 Ill. 52, 192 N.E. 777;

> "The court permitted the prosecution to prove by an officer that the defendants refused to make a statement at the police station. In this refusal they were within their rights, and the fact that they refused to make a statement had no tendency to either prove or disprove the charge against them. The admission of this evidence was prejudicial, and since it was neither material nor relevant to the issue being tried, it should have been excluded."

The same result follows even if the accused is advised of his rights under *Miranda*. (*People v. Lampson*, 129 Ill.App.2d 72, 262 N.E.2d 601 and *United States v. Matos*, 444 F.2d 1071.) Such evidence is held inappropriate because of its lack of probative value and this characteristic is the same whether it be considered from the point of view tending to prove guilt or for impeaching credibility. Unlike *Harris* evidence of silence or refusal to speak is inadmissible in support of the prosecution's case not because it was illegally obtained but because of its lack of probative value. The essential nature or character of the evidence or the reasons for its exclusion do not change merely because the defendant testifies. This to me is a distinguishing difference depending on the inherent quality of the evidence and is beyond the particular holding in the *Harris* case relating as it does to evidence originally excluded on account of some illegality in the procedure.

In further support of my conclusion that evidence of silence is improper even for purposes of impeachment it seems to me that if such evidence were proper the warning and advice required by *Miranda* would have to be expanded to provide not only that if the accused waived his right to remain silent whatever he said might be used against him but also if he exercised his right to remain silent such fact could be used to attack or diminish his credibility if he elected to testify in his own behalf. (*United States v. Brinson* (6th Cir. 1969), 411 F.2d 1057.) To the same effect is *Johnson v. United States*, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, which in *dicta* declared that the trial court not only erred in permitting the defendant to refuse to answer a question but also erred in failing to advise the defendant that his refusal to answer could be commented upon and was commented upon. The holding is *dicta* because the Court also held that defendant had withdrawn his objection to the complained of argument and hence it was not preserved for review.

Finally it seems to me a matter of legal sophistry to say that an accused is under no duty to speak but then let his election so to do later be considered as having adverse consequences.