THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRITZ AUTMAN, Defendant-Appellant.

(No. 73-31;

Third District—May 14, 1973.

STOUDER, J., dissenting.

John L. Barton, of Marseilles, for appellant.

Ludwig J. Kuhar, Assistant State's Attorney, of Joliet, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Fritz Autman was found guilty in a jury trial of the offense of armed robbery and sentenced to imprisonment thereafter for not less than 7 nor more than 20 years.

From the record in this cause it appears that an armed robbery of a Lewis Store was committed on December 19, 1970. Two men participated. One man, who was wearing a gray cap, carried a sawed-off shotgun. When the owner saw the shotgun, he sounded an alarm which rang at the police station. While the police officers did not believe that the alarm was serious and thought that possibly the alarm itself was faulty, they did proceed to the Lewis Store. As they approached the front of the store they saw defendant Autman standing just inside. Autman left as the police officers entered. One officer testified that Autman was wearing a gray cap. After the officers learned of the robbery they concluded that the man who had exited as they were coming in was one of the robbers. When one officer returned to the police station he matched a photograph with his observations of the suspect's face. The photograph was of the defendant Autman. The policeman said that he had carefully observed the suspect's physical characteristics and that the store had been well lighted. This policeman independently identified Autman in court, based solely, he stated, on his observation of Autman at the store. The store owner, Milton Lewis, testified that the robber carrying the gun and wearing a "big-apple cap, a sort of gray and black spotted affair with an unusual design", pointed the gun at him and took money and some sweatshirts. Although Lewis did not obtain a

good view of the robber's face he thought he had seen the robber and the robber's cap before. Lewis sold hats and particularly had thought that the robber's hat was unique. The robber who held the gun entered the store with an accomplice. As the accomplice remained in the front, the man with the gun fled through the rear door. When Lewis returned to the front of the store, the accomplice asked where the robber holding the gun had gone. When Lewis stated that he had gone out the back door, the accomplice also left through the rear door. Lewis was not able to state whether either or both of the robbers returned to the front of the store.

Lewis remembered that shortly after the robbery he thought that the robber who held the gun had been in his store on three recent prior occasions, the last of which was on the day of the robbery. He was particularly observant because of the uniqueness of the cap, and he had seen it on these three prior occasions. He also remembered that the individual had a peculiar gait and voice. He likewise remembered the physical build of the individual. He remembered that the man had been in the store two weeks earlier applying for license plates and that the name on the application was Fritz Autman. Lewis explained at the trial that he was unable to identify a picture of Autman at the police station for the reason that he was agitated at the time and more familiar with the robber's cap than his face. He described the suspect's clothing and his general physical characteristic and such description was consistent with the description provided by the police officer on the scene and by one of the employees in the Lewis Store. When Autman was arrested he was wearing garments that were identified by Lewis and his employee as being like those they observed during the robbery.

A police officer who appeared at the store after the robbery for the purpose of obtaining a full report from Lewis, said that while he was on his way to the store to answer the call with respect to the burglar alarm, he passed Autman in the same automobile that a tow-truck operator subsequently towed away, as hereinafter set forth. The lights were off and the car was moving slowly. He knew the automobile was one that Autman had been driving two months earlier because he had arrested Autman in it at that time. He pursued the car, found it parked with the motor running, headlights on, and the driver's window open, and noted that there was a sawed-off shotgun on the front seat, which he identified in court. This policeman and his partner found the coat that Lewis, the employee and the first policeman on the scene identified as being like the one the gun bearer wore during the robbery. The coat was found near the automobile.

A tow-truck operator testified that on December 19, 1970, approxi-

mately an hour after the robbery, at the request of police, he moved an automobile which was parked about a block and a half from the Lewis Store. A sawed-off shotgun was on the front seat. Lewis and his employee testified that the shotgun resembled one they had observed during the robbery.

Another police officer testified that, following the robbery, he personally chased a suspect from the store and subsequently apprehended him. That suspect's clothing was similar to the description which Lewis gave of the clothing worn by the accomplice. The suspect did not drive an automobile after he left the store.

The defense offered no evidence. On appeal in this court, defendant requests reversal on three grounds: (1) that the State proved that he did not commit the armed robbery; (2) that he was denied a fair trial by the refusal of the request to have read again material testimony heard by the jury; and, (3) that the defendant was denied his right to trial by jury when the court communicated in writing with the jury without notice to the defendant.

It is contended by the defendant that since Lewis said the gun-bearing robber left through the rear door, the person who was in the front of the store could not have been the robber. We do not agree with this conclusion or analysis of the facts. The jury as the finder of fact was charged with the responsibility of evaluating the testimony, weighing credibility, and determining how any discrepancies in the testimony should be construed or reconciled. While there may have been some discrepancies in the testimony, as is not unusual, we believe that the record shows evidence which was consistent with the jury's verdict of guilt as to defendant. From the record in this case we could not find, as a matter of law, that there was evidence which raised a reasonable doubt of guilt. (*People v. Hoffman*, 45 Ill.2d 221, 258 N.E.2d 326; *People v. Lawrence*, 126 Ill.App.2d 202, 261 N.E.2d 459.) Lewis identified Autman as the man who robbed him. The first police officer on the scene identified Autman as the man who passed him as he entered the store. Another police officer identified Autman as having been near the scene, and in possible possession of a sawed-off shotgun, while driving an automobile in a suspicious manner. This officer was able to establish circumstantially that Autman fled from the automobile. Lewis, his employee, and the policeman were in agreement concerning the suspect's clothing, and Lewis identified the gun and coat as being similar to those which had been in Autman's possession. Police officers had retrieved these from the automobile or the area near the automobile which Autman had been driving, according to the testimony.

The State and defense stipulated that Lewis was in a state of high

emotional agitation following the robbery. His emotional state would seem both a sufficient and complete explanation of his inability to remember precisely certain durations of time. He stated directly that after the two robbers left through the rear of the store, he did not know whether they returned to the front. Either his lack of knowledge, as he stated, or his confusion could explain why he was unable to determine that one of the robbers was present in the front of the store when police arrived. On the basis of the record, this left a question of fact to be determined by the jury and is not inconsistent with the jury's finding that Autman was guilty of the robbery beyond a reasonable doubt.

■■ The remaining two contentions of defendant relating to the fact that the judge refused in writing to grant the jury's written request to have certain testimony read to the jury during its deliberations, are asserted as a basis for reversal as hereinabove noted in the second and third contentions of defendant. We have considered the precise issues in the opinion recently filed in an appeal by Autman's co-defendant, David Pulley, *People v. Pulley, ante,* p. 292, where we considered and rejected similar contentions which were raised by David Pulley, who was described as Autman's accomplice in the robbery. In this cause, as in the *Pulley* case, counsel relies for authority upon proposed standards of the American Bar Association and on the case law of other States. We noted that in Illinois, the conduct of the trial is generally within the reasonable discretion of the trial court except to the extent that it is specifically controlled by constitutional, statutory, or judicial authority or may involve an abuse of discretion. Since there are no such specific constitutional, statutory or binding judicial authorities and since appellant failed to show any abuse of discretion, no basis for reversal is shown in this cause (as was true in the *Pulley* case). We also found in the *Pulley* case, as is true in this cause, that there was no reversible error arising from the written reply of the trial court denying the written request to have the reporter read back some of the testimony. We noted in the *Pulley* case that the situation in the present case is clearly distinguishable from that which existed in *People v. Harmon,* 104 Ill.App.2d 294, 244 N.E.2d 358. We pointed out that in the *Harmon* case it was clear that defendant's attorney was not present and that the jury had raised a question with reference to an issue of law and not to a question concerning the reading of testimony as was true in the present case. We, therefore, conclude that there is no basis for reversal since a simple request was made to have some of the testimony read, and where the trial court made a simple denial of such request.

Since we find no reversible error in the record, the judgment of the circuit court of Will County will be affirmed.

Affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER dissenting:

I do not agree with the majority of the court. I believe reversible error was committed when the trial judge refused to grant the jury's request to have testimony reread. Autman, the defendant in this case, and Pulley, the defendant in *People v. Pulley, ante,* p. 292, were both charged with the robbery of Lewis at his store in Joliet. Each was tried separately before a jury and Autman, the defendant in this case, was convicted of armed robbery. In Pulley's case, the jury could not agree on the charge of armed robbery but did find Pulley guilty of attempt murder. In the *Pulley* case, as in the instant case, the jury requested that testimony be reread which request was refused by the trial judge because he believed he was not permitted to do so. That the same problem arises in two separate trials involving the same robbery may, of course, be considered coincidental, but it is also possible the nature of the evidence, which was somewhat similar, contributed to confusion or uncertainty in the minds of the jurors.

In my dissenting opinion in *People v. Queen,* 8 Ill.App.3d 858, 290 N.E.2d 631 (petition for leave to appeal granted), I discussed at length my reasons for believing that a trial judge commits reversible error when he refuses to respond affirmatively to or make appropriate inquiries with regard to requests by juries for assistance in resolving problems which may have arisen regarding the evidence. As in *People v. Pulley, ante,* p. 292, where I also dissented from the approval of the action of a trial judge refusing to respond to the request of a jury, and where I found extensive discussion unnecessary, relying on my previous dissent in *Queen,* I believe it unnecessary to do any more in this dissent than apply my previous reasoning to the facts of this case.

Again the trial judge refused to respond to the request of the jury except by informing them that he was not permitted to grant their request. As in the cases previously noted, the trial judge did not purport to exercise any discretion and under such circumstances there is no basis in the record for reviewing the reasonableness of his action or determining whether he abused his discretion. If there is no basis for determining whether an abuse of discretion has occurred, then I believe, as I have previously stated, that prejudicial error results.

Notwithstanding the trial judge's own assertion that he was not permitted to have testimony reread or in other words, that he had no discretion to grant the request, the majority has nevertheless concluded that the judge did not abuse his discretion. Assuming, for the purposes of argument, that perhaps the evidence should be considered as a whole in determining whether defendant was prejudiced and denied a fair trial, it is, of course, impossible to ascertain the motivation for the jury's problem or how the failure of the court to respond may have affected its decision. Nevertheless, the evidence reveals many conflicts and discrepancies which the jury was required to resolve. To resolve such issues may well have involved uncertainties based on the frailty of memory and recollection.

The witnesses who testified for the prosecution were first Lewis, the victim of the robbery, second, an employee in the store and then in order, two crime laboratory technicians, the tow truck operator and eleven police officers. Of these witnesses only Lewis and Stahl identified the defendant as being one of the robbers or in the store at the time of the offense. As is pointed out in the majority opinion, the testimony of these two witnesses is hopelessly irreconcilable. The majority concludes that the discrepancies in their testimony raised questions which were within the province of the jury to resolve and even though this be so the extent of the conflict in the testimony of these two witnesses could cause difficult problems in the jury's determination. Accordingly, I believe defendant could have been prejudiced by the court's failure to grant the jury's request for assistance or to inquire into the nature of the jury's problem.