THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT HUFF *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-257

Opinion filed July 6, 1981.

Ralph Ruebner and Scott H. Reynolds, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Lee Hugh Goodman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Albert Huff, Eddie Huff, and Byron Lee, a/k/a Byron Lee Huff (defendants), were convicted of the rape and armed

robbery of the complainant, and the armed robbery of Julius Mzarteoeuseary. Defendants appeal. Their sole contention is they were not proven guilty beyond a reasonable doubt.

The testimony shows that on February 16, 1978, Julius Mzarteoeuseary, 68 years old, was alone in his apartment in Chicago. At approximately 9:30 p.m. he answered a knock at his door. Four or five men entered forcibly, knocking him to the floor. The intruders tied him up and struck him on the head several times with a pistol. They then robbed Mzarteoeuseary of his wristwatch, a cigarette lighter, four cameras, two boxes of underwear, and a gold medallion on which the likeness of Napoleon was embossed.

After about one hour, the assailants took Mzarteoeuseary to the apartment of his neighbor, the complainant. They knocked at the door. When Mzarteoeuseary answered, she opened the door slightly. The assailants burst into the apartment. They shoved Mzarteoeuseary through the door and to the ground. They ordered everybody to "hit the floor." Also in the apartment at the time were the complainant's stepbrother, Charles Hall, and her 8-year-old son, Frank. Hall was bound and placed on the couch in the living room. Frank was left in his bedroom.

While the others were searching the apartment, one of the intruders ordered the complainant into the bathroom. He made certain the light in the bathroom was out and ordered her to remove her clothing. She refused and he ripped her clothes from her body. He then had sexual intercourse with her while holding a gun to her head. After about 15 minutes, a second man entered the bathroom. He was armed with a pistol. He also had intercourse with complainant. Then a third intruder entered the bathroom. He demanded that complainant perform an act of sodomy. She refused and the man placed his pistol in her vagina and said that he should "blow it off" for refusing his request. He then raped her twice. After about a half-hour, a fourth man, Lamoris Paige, not a party to this appeal, entered the bathroom with complainant's 8-year-old son, Frank. Paige put Frank on the toilet seat and said that he was going to show the child "just what kind of mamma he had." He then raped complainant while Frank sat less than a foot away.

Complainant was then bound and ordered to lie on her son's bed. One of the defendants struck her on the head with the barrel of a pistol. The intruders then left with two of her television sets, some jewelry, some coins and a calculator. Eventually, complainant freed herself, Hall and Mzarteoeuseary. She then sought help from a neighbor, Pauline Williams, who called the police.

Investigators David Olsen and Robert Utter arrived. After talking to the victims and some neighbors, the investigators went to interrogate Lamoris Paige, who lived across the street. Paige was taken to the police

station. He admitted being involved in the rapes and robberies, and identified the defendants as participants. The investigators then took Paige to his apartment where they recovered one of Mzarteoeuseary's cameras, some jewelry, a calculator, and a collection of coins, all of which the complainant identified as belonging to her.

Lamoris Paige, the two investigators, and Patrolmen Zaboric and Carter went to the apartment of Albert and Eddie Huff. The two men were arrested and searched. In Albert's possession was found a food stamp receipt in the name of the complainant and some of her jewelry. Albert was later searched at the police station. The police found he had a cigarette lighter which was identified as belonging to Mzarteoeuseary. Eddie was searched at the police station and found to possess Mzarteoeuseary's Napoleon medallion and wristwatch.

The police officers then went to the apartment of Byron Lee and arrested him. There, the police recovered a starter's pistol, which was identified as having been used in the commission of the crimes, and a television set which belonged to the complainant.

The defendants testified in their own behalf. They offered alibis. They also claimed all the property in question was either their own or was "planted" by police officers. The defense did not offer any evidence to corroborate their alibis.

Defendant Eddie Huff testified he did not go to work on February 16, 1978, because of a cold. He remained in bed until 10 a.m. At 5:45 p.m. defendant Byron Lee came over. They brought some vodka and stayed home until 8:30 p.m. Eddie Huff then went to play basketball with a friend, Donald McCoy. Eddie Huff was not with Albert Huff or Byron Lee on the evening the crimes were committed. He denied that Mzarteoeuseary's watch was removed from his pocket at the police station.

Albert Huff testified that about 3:30 p.m. on February 16, 1978, he went to a friend's house. About 8 p.m. he went downtown and saw "Blue Collar" at the Woods Theatre. About 12 or 12:30 a.m. he came home and went to bed. He did not see Byron Lee (defendant) that day. He himself had purchased the cigarette lighter identified by Mzarteoeuseary. He had never previously seen the starter's pistol.

Ronald Dilert, employee of the Woods Theatre, called by the State, testified that he believed the picture "Blue Collar" was shown at the Chicago Theater on February 16, 1978. The Woods Theatre showed "A Hero Ain't Nothing But A Sandwich" on that date.

Byron Lee testified that he went to his mother's house on the evening of February 16, 1978. He and Eddie Huff went to cash his check and then bought vodka. He went back to his mother's home where he, Eddie, his mother and sister played cards until 7:45 or 8 p.m. He remained there until 12 or 12:30 a.m. Later he saw Lamoris Paige carrying a television set. He

bought it from Paige for $15. He then took the set home in a cab and went to sleep. All three defendants denied participation in the rapes and robberies.

Basically defendants argue the State's witnesses were inherently incredible and that inconsistencies in the testimony of the rape victim vitiated her identification of the defendants. Defendants urge complainant testified six people entered her apartment during the initial invasion; she testified to the actions of only four people and accused one of them of raping her twice; then, in view of her previous testimony that she had been raped by six men, she modified her testimony to state that two of the defendants had raped her twice. In addition, she mentioned one defendant "ripped off her clothes," whereas she had previously testified that her clothes were taken off. Also, she testified one defendant "ripped the bathroom door off the hinge," and she also stated that the bathroom was entered peacefully. Defendants also point out the complainant stated on direct examination she identified defendants in a lineup on the day following the rape. This is contrasted with testimony by defendants Eddie Huff and Byron Lee that she was unable to identify them or Albert Huff in the lineup until a police officer asked them to step out.

We are not persuaded by any or all of these arguments. We hold the evidence was more than sufficient to prove the defendants guilty beyond a reasonable doubt. We have here simply an issue of credibility for determination by the trier of fact. All of these alleged discrepancies were presented to the trial court by defendant's able counsel. The trial court found defendants guilty of rape and armed robbery, "beyond any question, beyond any doubt."

The defendants are simply asking this court to intrude upon the province of the trial court. The determination of the credibility of witnesses is peculiarly a question of fact, to be evaluated by the trier of fact. (See *People v. Berland* (1978), 74 Ill. 2d 286, 305-06, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63.) In the case at bar, the experienced and able trial judge observed the bearing and demeanor of the witnesses, evaluated their respective credibility, and determined that the defendants were proved guilty beyond a reasonable doubt. Our careful reading of the record convinces us the evidence is not so unsatisfactory that a reasonable doubt of guilt appears.

It is important to note that " 'where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made.' " *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513, quoting *People v. Stringer* (1972), 52

Ill. 2d 564, 569, 289 N.E.2d 631. See also *People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666, and cases cited therein.

In our opinion, the witness in question, the complainant had ample opportunity to observe her assailants and she was able to make a positive identification. Even though the bathroom was not illuminated during each rape, she had an opportunity to view her assailants when they first forced their way into her apartment, when the bathroom door was opened as each rapist entered, and finally when she was taken to her son's bedroom and bound. Furthermore, the testimony of the complainant, unlike that of the defendants, does not stand uncorroborated. Her identification is corroborated beyond reasonable doubt by the testimony of Officers Olsen and Zaboric regarding the identification of the defendants by Lamoris Paige and the defendants' possession of the property of the victims.

The defendants cite *People v. Woodall* (1970), 131 Ill. App. 2d 662, 264 N.E.2d 303. We find *Woodall* factually inapposite to the case at bar. There, this court reversed a conviction based solely on an uncertain eyewitness identification. In *Woodall* the witness was a deaf mute woman, the robbers wore masks throughout the period she observed them, the witness' description of the robbers changed during the investigation, the witness failed to identify the defendants from a photograph, and the witness positively identified individuals other than the defendants prior to trial. In contrast, in the case at bar, the complainant never wavered in her description of her assailants or in her identification of the defendants as the individuals who committed the crimes.

For these reasons the judgments appealed from are affirmed.

One further thought must be stated. In our opinion, this appeal is entirely frivolous. We regard the alibi evidence as spurious. It is our considered opinion that the use of the procedure set forth in *Anders v. California* (1967), 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396, would have done full justice to the defendants and would have yielded additional benefits to society such as a considerable saving of time for many people, a reduction of the expense put upon the taxpayers and judicial economy. The single result of the procedure and effort required to dispose of this appeal in the usual manner is to hamper this court in giving due consideration to more important duties in the administration of justice. It is urged that the use of the *Anders* procedure should be greatly expanded.

Judgments affirmed.

McGLOON and O'CONNOR, JJ., concur.